[No. 32922-1-II. Division Two. February 28, 2006.]

*In the Matter of the Marriage of* STACEY L. KINNAN, *Appellant*, and LINNETTE M. JORDAN, *Respondent*.

*Dean K. Langsdorf* and *Lori A. Ferguson* (of *Gregerson & Langsdorf*), for appellant.

*Catherine W. Smith* and *Valerie A. Villacin* (of *Edwards Sieh Smith & Goodfriend, P.S.*) and *Scott J. Horenstein*, for respondent.

¶1 BRIDGEWATER, J. — Stacey L. Kinnan appeals from a modification of a parenting plan that removed a restriction requiring Linnette M. Jordan, the mother, to supervise the two minor children of the parties and at no time to allow Jeff Jordan to be alone with the children should she leave the residence. The dissolution trial court, also the modification trial court, had imposed the restriction because Mr. Jordan, then Mrs. Jordan's boyfriend, had pleaded guilty to communication with a minor for immoral purposes. We reverse, vacate the modification order, and remand for an appropriate hearing.

## I. FACTS

¶2 Mr. Kinnan and Mrs. Jordan (formerly known as Kinnan) divorced on May 28, 2003.[1] At that time, the dissolution trial court entered a final parenting plan for the parties' two children.[2] Included in the parenting plan, the court imposed the following restriction under paragraph "3.13 OTHER":

> The mother shall be an independent supervisor of the children, [A.K.] and [C.K.], when they are in her care. She shall at no time knowingly leave either child alone with Jeff Jordan, should she leave the residence.

[1] The court found that the parties dissolved their marriage and entered a final parenting plan on May 28, 2002. But the parties entered the final parenting plan on May 28, 2003; presumably, this date is the same date the parties dissolved their marriage.

[2] The parties have another child, S.K., who was 17 when the parties entered the final parenting plan.

Clerk's Papers (CP) at 8. The court imposed this restriction because Mr. Jordan had pleaded guilty to communication with a minor for immoral purposes in 1988.[3] (Mr. Jordan successfully concluded his sentence, which included work release and probation, and a two-year treatment program for sex offenders.[4])

¶3 On June 16, 2003, the Jordans married.

¶4 In 2004, Mrs. Jordan sought to remove the restriction that "[s]he shall at no time knowingly leave either child alone with Jeff Jordan, should she leave the residence." CP at 8. She declared that "it can be a major inconvenience for me and my husband and the children for me to have to be present at all times." CP at 14. At the request of the trial court, the parties attempted to mediate the issue with Mary Hatzenbeler. The mediation failed.

¶5 On November 23, 2004, Mrs. Jordan filed a motion and declaration for an order removing the supervision requirement in the parenting plan. In support of her motion, she declared that Mr. Jordan "has been treated . . . and he poses no risk whatsoever to our daughter." CP at 14. She also declared, "I understand that RCW 26-.09.191 does allow the restriction to be lifted if the 'offender' has had no repeat offenses over the last two years. In fact, he has had no repeat offenses at all and the incident occurred 16 years ago." CP at 14.

¶6 Attached to her motion, Mrs. Jordan included a 2003 evaluation of C.K. Among other things, the evaluation concluded that C.K. had been told conflicting stories about Mr. Jordan and that C.K. denied feeling unsafe in either parental house. Mrs. Jordan also attached a report from Dr. C. Kirk Johnson and Dr. Scott A. Senn, both of whom conducted a sexual risk assessment of Mr. Jordan in 2001. This report concluded that Mr. Jordan was "a low risk

---

[3] We note that Mr. Jordan declared that he had pleaded guilty in 1989. *See* CP at 62.

[4] According to Mr. Kinnan's declaration, Mr. Jordan "received his therapy from a now defunct treatment program. All that could be provided on Mr. Jordan was Respondent/Mother's indicating that the treatment was completed." CP at 54.

offender." CP at 20. Mrs. Jordan also attached the results of a polygraph examination, which indicated that Mr. Jordan had been truthful about not having any sexual contact with a child since his 1988 conviction.

¶7 On December 7, 2004, Mr. Kinnan filed a motion either to terminate Mrs. Jordan's visitation or to require that all visitation between Mrs. Jordan and the children be supervised by a third party whenever Mr. Jordan is present. In support of his motion, he declared that Mr. Jordan continued to pose a risk to the children. Mr. Kinnan stated, "Dr. Johnson could not indicate that Mr. Jordan did not represent a risk to [A.K. and C.K.], nor could he assure Petitioner/Father that [A.K. and C.K.] would be safe with Mr. Jordan."[5] CP at 56. In addition, Mr. Kinnan argued that Mrs. Jordan should no longer be considered a neutral and independent supervisor of the children. He relied on his understanding of RCW 26.09.191.

¶8 In a response to Mr. Jordan's subsequent declaration, Mr. Kinnan declared, "Common sense indicates that he should not be around them unsupervised, Dr. Johnson indicates that he should not be around them unsupervised, and the statute indicates that he should not be around them unsupervised." CP at 69. Mr. Kinnan referenced yet another sexual risk assessment performed by Dr. Johnson in 2002. Although Dr. Johnson considered additional information about sexual abuse allegations, he nevertheless concluded that it was his "opinion that the risk estimate remains low." CP at 76.

¶9 On January 11, 2005, the parties appeared before the modification court. The court stated, "[W]hen I sent the parties to mediation [I] said that they needed now to start functioning like parents rather than having to rely on the Court." Report of Proceedings (RP) at 2. Because mediation failed, the court "asked that the mediator be here and we

---

[5] In their report, Dr. Johnson and Dr. Senn recommended that "Mr. Jordan should adhere to the relapse prevention guidelines that he and his previous treatment provider produced, in order to remain at a low risk for reoffense. These guidelines should include Mr. Jordan not being the primary provider of childcare and discipline for his future stepchildren." CP at 20.

get it talked out and figured out, and if we couldn't get an agreement, then I would make a ruling on the issue. So am I correctly summarizing where we are?" RP at 2.

¶10 Mr. Kinnan's counsel indicated, "I think we also said that we would have an evidentiary hearing." RP at 2. The court replied, "No, I don't think I said that." RP at 3. The court then implied that an evidentiary hearing would be necessary only in the event that the issues were not resolved. Mrs. Jordan's counsel agreed, "I don't remember that, not that we—not that we wouldn't or couldn't, but that would be hard to do today, but—" RP at 3.

¶11 After hearing argument from counsel on the need for the restriction, the court stated, "And I think one of the reasons that we're here today is I wanted to hear from the guardian ad litem on what her recommendations might be, because her ultimate job is—is to—to tell us what's in the best interest of the children." RP at 18. The mediator, Ms. Hatzenbeler, corrected the court and indicated that she was the mediator, not the guardian ad litem. The court then noted that all parties had waived their right of confidentiality with the mediator.[6]

¶12 After swearing in Ms. Hatzenbeler, the court asked, "[F]rom a mediation standpoint, what would your recommendation be in terms of trying to resolve the issue which both counsel have spoken to?" RP at 19.

¶13 Ms. Hatzenbeler testified that "these kids are probably at a greater risk of being sexually molested, abused or whatever at the mall than they are in either of their homes." RP at 21-22. She also expressed concern that the "whole sexual issue in this family is got—getting out of control." RP at 22. "And the sooner that we get past this, I think it's the better for not only the kids but for the adults in their lives as well." RP at 23. In response to questioning by Mrs. Jordan's counsel, Ms. Hatzenbeler testified, "That—that restriction of—of not being able to leave [Mr.

---

[6] Ms. Hatzenbeler testified, "I keep everything confidential in mediation. This is an unusual case. I asked both of the parties to sign releases so that I could talk openly here in court today and share the mediation notes." RP at 27.

Jordan] alone gives the children the impression, I think, that [Mr. Jordan is] weird and dangerous." RP at 26. "I really don't think that there's a need for restrictions at this time." RP at 27.

¶14 Yet, Ms. Hatzenbeler noted that she did not have the court file and did not review the court file on this case. Additionally, she noted that she had not talked to Ms. Ann Rhodes, the guardian ad litem for this case, or to Dr. Johnson. In fact, Ms. Hatzenbeler testified that "I did not talk to anybody outside of the mediations until these waivers were signed by both parties here today." RP at 41. But, neither party objected to Ms. Hatzenbeler's testimony.

¶15 In reaching a decision on the parties' motions, the court stated:

> Let me tell you what the Court of Appeals would do with a situation like this. You remember Mary Kay Letourneau, who had had sexual relations with one of her students and had two kids. In the divorce case involving her husband at that time and the children, the court allowed her contact with her own children, even though she had been convicted of a class A felony, sexual abuse case against another, quote, "child," unquote.
>
> I have sent a very serious sexual abuse case I did a sentencing on and indicated that this offender should have—not have contact with any minor children. The Court of Appeals sent it back and said, You can only have authority over the children that were the victims.
>
> So the Courts of Appeals are going to say, you know, regardless of how tortured this 26.09 section is, unless we're talking about the victim, let's move on.

RP at 42-43.

¶16 The court continued, "Dr. Johnson has said there is minimal risk, and that's all he can say about anybody." RP at 43. "So let's move on. We don't need to have a hearing. If you want to send this to the Court of Appeals and if they want us to have a hearing, we can do that, but I don't think so. I don't have any information to continue restrictions." RP at 43.

¶17 After the court announced its decision, Mr. Kinnan filed a motion for reconsideration.[7] In his declaration, he stated, "This court indicated in court last time that the meeting would be a mediation between all of the parties. I was very surprised that this court would make a decision without me being able to present my case and put on witnesses." CP at 82. Mr. Kinnan indicated that he would have called himself and Ms. Rhodes, the guardian ad litem, as witnesses. The court denied the motion for reconsideration.

## II. STANDARD OF REVIEW

■ ¶18 Generally, we review a court's modification of a parenting plan for an abuse of discretion. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993) (a trial court's decision will not be reversed on appeal unless the court exercised its discretion in an untenable or manifestly unreasonable way). Here, the court's failure to follow the statutory requirements was an abuse of discretion.

## III. MODIFICATION OR ADJUSTMENT OF PARENTING PLAN

### A. RCW 26.09.260

¶19 Except as otherwise provided in subsections (4) . . . and (10) of this section, the court shall not modify a prior custody decree or a parenting plan unless it finds . . . that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

RCW 26.09.260(1).

¶20 In applying these standards, the court shall retain the residential schedule established by a prior parenting

---

[7] Mr. Kinnan's counsel also filed an objection to the proposed findings of fact and conclusions of law. Among other things, he states that "neither Father nor his attorney realized that this was going to be an evidentiary hearing because they assumed it was going to be a mediation between all of the parties." CP at 92.

plan unless the "child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." RCW 26.09.260(2)(c).[8]

¶21 Nevertheless, under RCW 26.09.260(10), the court may adjust any of the nonresidential aspects of a parenting plan (1) upon a showing of a substantial change of circumstances of either parent or the child and (2) where the adjustment is in the best interest of the child. RCW 26-.09.260(10). The court may make this adjustment without considering the factors in RCW 26.09.260(2). RCW 26-.09.260(10).

## B. The Parties' Motions

¶22 Mrs. Jordan never indicated under which section of RCW 26.09.260 she filed her motion. Instead, she simply asked the court "for an order removing the restriction in the existing Parenting Plan that requires Linnette Jordan's husband, Jeff Jordan, to be supervised when he is in the presence of the minor children." CP at 13. But, because she did not seek to change any of the residential aspects of the parenting plan, we deem that Mrs. Jordan filed her motion under RCW 26.09.260(10).

¶23 And although the supervision restriction was not properly set forth in the parenting plan, we have no doubt that the dissolution court imposed this restriction under RCW 26.09.191.[9]

---

[8] For purposes of this discussion, RCW 26.09.260(2)(a), (b), and (d) are not at issue.

[9] RCW 26.09.191(2)(b) states in part:

The parent's residential time with the child shall be limited if it is found that the parent resides with a person who has engaged in any of the following conduct: (i) Physical, sexual, or a pattern of emotional abuse of a child . . . or (iii) the person has been convicted as an adult or as a juvenile has been adjudicated of a sex offense under:

. . . .

¶24 Nevertheless, Mrs. Jordan questions whether RCW 26.09.191 is relevant here. In her response brief, she argues, "Because no RCW 26.09.191 restrictions were placed on the mother in the initial, unappealed, parenting plan, the trial court had discretion to lift the mother's supervision requirement without applying the standards of RCW 26.09.191." Br. of Resp't at 20.

¶25 But, we reject her argument that the court could remove the restriction without applying the standards and requirements of RCW 26.09.191. Here, the court's decision to order an adjustment to the parenting plan and to remove the supervision restriction certainly depended on whether the "contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote." RCW 26.09.191(2)(n). The factors that influence our determination are: (1) the nature of the restriction, (2) Mrs. Jordan's declaration in support of her motion,[10] and (3) the court's findings of fact and conclusions of law entered in aid of the modification.[11]

---

(H) Chapter 9.68A RCW.

And, RCW 26.09.191(2)(n) states in part:

> If the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations of (a), (b), and (m)(i) and (iii) of this subsection, . . . then the court need not apply the limitations of (a), (b), and (m)(i) and (iii) of this subsection.

[10] In her declaration, Mrs. Jordan stated, "I understand that RCW 26.09.191 does allow the restriction to be lifted if the 'offender' has had no repeat offenses over the last two years." CP at 14.

[11] The pertinent findings of fact are:

4. In 1988, Jeff Jordan pled guilty to communication with a minor for immoral purposes.

5. Subsequent to the plea, Jeff Jordan successfully completed a two-year program for sex offenders at Providence Health Center in June of 1991 and was discharged from probation on July 29, 1991. He also passed two lie detector tests indicating truthfulness when asked if he had committed any other infractions since that time. He also was allowed to adopt two children after an

¶26 Similarly, Mr. Kinnan never indicated under which section of RCW 26.09.260 he filed his motion. Instead, he asked the court "to either terminate visitation between Mother and the parties' children or to require that all visitation between Mother and children be supervised by a third party whenever Jeff Jordan is present." CP at 52. In his declaration, Mr. Kinnan requested "that he be made the residential parent of both children." CP at 57. Because he sought to modify both residential and nonresidential aspects of the parenting plan, we deem that Mr. Kinnan made his motion under RCW 26.09.260(1), (2)(c), and/or (4).[12]

## C. RCW 26.09.270

¶27 After a party seeking to modify a prior parenting plan has filed its motion, supported by "an affidavit setting forth facts supporting the requested order or modification," RCW 26.09.270 requires the court to make an adequate cause determination. Most importantly, the "court shall deny the motion unless it *finds that adequate cause for hearing the motion is established* by the affidavits, in which case *it shall set a date for hearing* on an order to show cause why the requested order or modification should not be granted." RCW 26.09.270 (emphasis added).

---

investigation during which the plea was revealed. He has also assisted in raising four other children. He was evaluated by Dr. Kirk Johnson and found to be a low risk as a repeat offender. The Respondent completed the Vancouver Guidance Clinic Sex Offender Chaperone Program on March 21, 2002.

. . . .

7. The requirements of RCW 26.09.191, to the extent they apply to this case, have been met in reference to an order of unsupervised contact between Jeff Jordan and the parties' minor children, neither of whom were abused by Jeff Jordan.

CP at 108.

The pertinent conclusion of law is: "2. As they may be applicable, all of the conditions of RCW 26.09.191 have been met to allow a lifting of supervision [restrictions] between Jeff Jordan and the parties' minor children." CP at 109.

[12] RCW 26.09.260(4) states:

(4) The court may reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191.

■■ ¶28 Here, the court failed in its application and interpretation of RCW 26.09.270. First, the court never made a finding that "adequate cause" existed for modification of the parenting plan. In other words, we have no record of adequate cause for either Mrs. Jordan's or Mr. Kinnan's motions. RCW 26.09.270.

¶29 We review this court's adequate cause determination for abuse of discretion.[13] *In re Marriage of Flynn*, 94 Wn. App. 185, 189-91, 972 P.2d 500 (1999). A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or untenable reasons. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

¶30 In this case, the court gave no reasons for whether adequate cause existed. And although RCW 26.09.270 does not require a court to enter written findings of fact and conclusions of law, the court nonetheless must decide whether adequate cause existed. *Flynn*, 94 Wn. App. at 190-91. Without any reasons for whether adequate cause existed, we cannot say that the court based its decision on tenable grounds or reasons. Thus, we hold that the trial court abused its discretion.

■ ¶31 Second, the court failed to "set a date for hearing on an order to show cause why the requested order or modification should not be granted." RCW 26.09.270. Instead, the court held a proceeding in which it "asked that the mediator be here and we get it talked out and figured out, and if we couldn't get an agreement, then I would make a ruling on the issue." RP at 2. In fact, the court implied that an evidentiary hearing would be necessary only in the event that the issues were not resolved. In concluding that it did not have any information to continue the restriction, the court stated, "So let's move on. We don't need to have a hearing." RP at 43.

---

[13] Because we have no record of whether the court decided this matter solely on the parties' affidavits, we do not stand in the same position as the court and we do not decide this issue as a matter of law. *Contra In re Marriage of Flynn*, 94 Wn. App. 185, 190, 972 P.2d 500 (1999).

¶32 A court's choice, interpretation, or application of a statute is a question of law that we review de novo under an error of law standard. *In re Marriage of Hansen*, 81 Wn. App. 494, 499, 914 P.2d 799 (1996); *see also State v. Law*, 110 Wn. App. 36, 39, 38 P.3d 374 (2002); *State v. J.A.*, 105 Wn. App. 879, 884-85, 20 P.3d 487 (2001).

¶33 "A court must construe a statute according to its plain language, and statutory construction is unnecessary and improper when the wording of a statute is unambiguous." *State v. Parada*, 75 Wn. App. 224, 230, 877 P.2d 231 (1994). We give statutes a rational, sensible construction. *State v. Thomas*, 121 Wn.2d 504, 512, 851 P.2d 673 (1993).

¶34 The court erred; a rational and sensible construction of RCW 26.09.270 required the court to set a date for a hearing on why the requested orders or modifications should be granted. RCW 26.09.270 does not permit the court to engage in alternative dispute resolution at this point in the proceedings or to hold a hearing in the event that matters are unresolved. Under RCW 26.09.270, the trial court does not have the unfettered discretion to decide what kind of hearing to hold and when to hold it.

¶35 Third, the court failed to give adequate notice of the proceeding to the parties. We note that the clerk's papers contain no notice that the court intended to hold a hearing in which the mediator would testify and would be subject to cross-examination. Likewise, the clerk's papers contain no notice that the court intended to rule on the requested orders or modifications at the hearing. In fact, Mr. Kinnan and his counsel plainly stated that they were surprised by the court's actions. Again, the court erred.

¶36 Finally, we are not holding that all motions for adjustment or modification of a parenting plan require a hearing.[14] But here, where Mrs. Jordan sought to remove a restriction that was reasonably calculated to protect the children from possible sexual abuse or harm and where Mr.

---

[14] And we are not holding that all motions for adjustment or modification of a parenting plan require a finding of whether adequate cause existed.

Kinnan sought to become the sole residential parent, the court erred in not holding an evidentiary hearing.

## D. Best Interests of the Children

■ ¶37 Furthermore, in examining the court's findings of fact and conclusions of law, we find no reference to the criteria in either RCW 26.09.260 or RCW 26.09.191.[15] Specifically, we find no reference to the best interests of the children in either the court's findings of fact or conclusions of law. The only possible reference to the best interests of the children is that Mr. Jordan "has formed a parental bond with the parties' minor children." CP at 100.

¶38 Yet, compliance with these criteria is mandatory. *In re Marriage of Stern*, 57 Wn. App. 707, 711, 789 P.2d 807, *review denied*, 115 Wn.2d 1013 (1990). "Failure by the trial court to make findings that reflect the application of each relevant factor is error." *Stern*, 57 Wn. App. at 711. Here, the court simply entered insufficient findings of fact and

---

[15] Again, RCW 26.09.260(1) states in part:

(1) Except as otherwise provided in . . . this section, the court shall not modify a prior custody decree or a parenting plan unless it finds . . . that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the *best interest of the child* and is necessary to serve the *best interests of the child*.

(Emphasis added.)

RCW 26.09.260(4) states in part: "The court may reduce or restrict contact . . . if it finds that the reduction or restriction would serve and protect the *best interests of the child* using the criteria in RCW 26.09.191." (Emphasis added.)

RCW 26.09.260(10) states in part: "The court may order adjustments to any of the nonresidential aspects of a parenting plan upon a showing of a substantial change of circumstances of either parent or of a child, and the adjustment is in the *best interest of the child*." (Emphasis added.)

And, RCW 26.09.191(2)(n) states in part:

(n) If the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the *child's best interests* to apply the limitations of (a), (b), and (m)(i) and (iii) of this subsection, . . . then the court need not apply the limitations of (a), (b), and (m)(i) and (iii) of this subsection.

(Emphasis added.)

conclusions of law. Because they do not reflect the factors in either RCW 26.09.260 or RCW 26.09.191, the court erred.

### IV. MOTION FOR RECONSIDERATION

¶39 Mr. Kinnan raised the issue of an evidentiary hearing in his motion and declaration for reconsideration (CR 59). His counsel also alluded to a request for an evidentiary hearing in his objection to the proposed findings of fact and conclusions of law and to the order proposed by Mrs. Jordan. Mr. Kinnan's counsel stated:

> 1. There was no stipulation that Mary Hatzenbeler would appear and testify, nor was there a stipulation that Father would accept any conclusion or opinion that she offered on the case. . . . In fact, neither Father nor his attorney realized that this was going to be an evidentiary hearing because they assumed it was going to be a mediation between all of the parties.

CP at 92. Yet, the court summarily denied Mr. Kinnan's motion for reconsideration.

¶40 Although Mr. Kinnan has not appealed from this order, under RAP 2.4(f) we can review the court's order deciding a motion for reconsideration. RAP 2.4(f) states in part:

> An appeal from a final judgment brings up for review the ruling of the trial court on an order deciding a timely motion based on (1) CR 50(b) . . . , (2) CR 52(b) . . . , [or] (3) CR 59 (reconsideration, new trial, and amendment of judgments).

¶41 Thus, because Mr. Kinnan appeals from a final judgment, we can review the trial court's order denying Mr. Kinnan's motion.

¶42 And, we review the trial court's order for an abuse of discretion. Motions for reconsideration are addressed to the sound discretion of the trial court and will not be reversed absent a clear or manifest abuse of that discretion. *State v. Scott*, 92 Wn.2d 209, 212, 595 P.2d 549 (1979); *see Wagner Dev., Inc. v. Fid. & Deposit Co. of Md*, 95 Wn.

App. 896, 906, 977 P.2d 639 (citing *Perry v. Hamilton*, 51 Wn. App. 936, 938, 756 P.2d 150, *review denied*, 111 Wn.2d 1017 (1988)), *review denied*, 139 Wn.2d 1005 (1999). In this case, the court abused its discretion in summarily denying Mr. Kinnan's motion for reconsideration. The court should have known that under RCW 26.09.270 it had an obligation to hold a hearing. In other words, given the facts and the applicable legal standard, the court's order was outside the range of acceptable choices. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997), *superseded by statute*, LAWS OF 2001, ch. 21, § 1.

## V. WAIVER

¶43 Mrs. Jordan argues that we should not consider Mr. Kinnan's argument based on RCW 26.09.191(2)(b) and (n) because he did not raise these arguments below. After all, she notes that Mr. Kinnan simply based his arguments, albeit erroneously, on RCW 26.09.191(2)(e), (g), and (j).

¶44 But we hold that Mr. Kinnan preserved his argument on appeal by directing the court to the correct statute, even though he failed to point to the correct section. In fact, "a statute not addressed below but pertinent to the substantive issues which were raised below may be considered for the first time on appeal." *Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990) (citing *State v. Fagalde*, 85 Wn.2d 730, 732, 539 P.2d 86 (1975)). Here, there is no doubt that RCW 26.09.191(2)(b), (e), (g), (j), and (n) all relate to restrictions in parenting plans. Therefore, it is both appropriate and necessary for this court to consider these obviously related sections in determining the merits of Mr. Kinnan's appeal.

¶45 Moreover, the court did not limit its findings of fact and conclusions of law to any particular sections of RCW 26.09.191. Instead, the court merely found, "The requirements of RCW 26.09.191, to the extent they apply to this case, have been met." CP at 108. And the court merely concluded, "As they may be applicable, all of the conditions

of RCW 26.09.191 have been met." CP at 109. Therefore, the court's findings of fact and conclusions of law are broad enough to permit Mr. Kinnan's argument on appeal.

¶46 Finally, we note that it is disingenuous for Mrs. Jordan to argue that Mr. Kinnan erroneously based his argument on RCW 26.09.191, yet at the same time to argue that the court was not required to comply with RCW 26.09.191.[16]

## VI. CONCLUSION

¶47 In conclusion, we hold that the modification court employed an improper procedure and abused its discretion. The court erred for several reasons:

1. The court proceeded only on the basis of Mrs. Jordan's motion. The court made no adequate cause determination for either Mrs. Jordan's or Mr. Kinnan's motion. And, in contradiction of RCW 26.09.270, the court merely denied Mr. Kinnan's motion in its order removing the supervision requirement from the parenting plan.

2. The court denied the parties an evidentiary hearing under RCW 26.09.270.

3. The court held a hearing without adequate notice to the parties, specifically to Mr. Kinnan or his counsel.

4. The court made no findings of fact or conclusions of law that removing the restriction was in the best interests of the children, as is required under RCW 26.09.260(1), (2)(c), (4), and (10) or RCW 26.09.191(2)(n).

¶48 Finally, we do not address the substantive facts relied on for the modification. Instead, because of these

---

[16] In her appellate brief, Mrs. Jordan states, "Because no RCW 26.09.191 restrictions were placed on the mother in the initial, unappealed, parenting plan, the trial court had discretion to lift the mother's supervision requirement without applying the standards of RCW 26.09.191." Br. of Resp't at 20. Yet in her declaration, Mrs. Jordan referred to RCW 26.09.191. She also permitted the court to find that "[t]he requirements of RCW 26.09.191, to the extent they apply to this case, have been met." CP at 108.

irregularities, we reverse, vacate the modification order, and remand for an appropriate hearing.[17]

¶49 Reversed, vacated, and remanded for hearings consistent with this opinion.

QUINN-BRINTNALL, C.J., and VAN DEREN, J., concur.

---

[17] We assume that when the matter is reconsidered it will be reconsidered before a different trial court judge. We assume so because the appealed action was similar in nature to a type of settlement conference and it would be inappropriate for the same judge to hear the case. *State v. Dominguez*, 81 Wn. App. 325, 328, 914 P.2d 141 (1996) ("Due process, the appearance of fairness doctrine and Canon 3(D)(1) of the Code of Judicial Conduct also require a judge to disqualify himself if he is biased against a party or his impartiality may reasonably be questioned."). Also, because the trial court purported to retain jurisdiction in this matter, we remind the court that *State ex rel. Mauerman v. Superior Court*, 44 Wn.2d 828, 830, 271 P.2d 435 (1954), provides that a modification is a new hearing and that the parties may file for a change of judge as a matter of right.