FILED
COURT OF APPEALS
DIVISION II

2014 AUG 12 PM 12: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 43812-7-II |
| MCKAYLA ELIZABETH CLINTON SMITH, | |
| Appellant, | |
| and | |
| MATTHEW DARRELL SMITH, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — McKayla Smith appeals the entry of a modified parenting plan placing primary residential custody of her two sons with her former husband Matthew.[1] McKayla contends that the trial court lacked authority to enter the 2012 modified parenting plan and that the modified parenting plan does not comply with several statutory requirements. McKayla also challenges the denial of her motion to remove the guardian ad litem (GAL), the rejection of her affidavits of prejudice filed against the three Grays Harbor County superior court judges, the trial court's award of back child support, and several orders that preceded the parenting plan at issue. Matthew requests attorney fees on appeal.

We need not review the orders that preceded the modified parenting plan because McKayla has already appealed these orders or waived any challenge to them. We hold that the

---

[1] We refer to the parties' first names for clarity. We intend no disrespect.

trial court had authority to modify the initial parenting plan and that it did not abuse that authority by entering the 2012 modified parenting plan. McKayla provides no argument to support her challenge of the back support award, so we do not review it. We see no abuse of discretion in the trial court's denial of McKayla's motion to remove the GAL, and we affirm the denial of her affidavits of prejudice because she had already filed an affidavit in this case. We deny Matthew's request for attorney fees because he cites no authority for that request.

## FACTS

McKayla and Matthew married in 2003. Their two sons, CS and RS, were born in 2003 and 2006. In 2006, McKayla filed a petition to dissolve the marriage. On August 15, 2008, Judge David Edwards entered a parenting plan that designated McKayla as the primary residential parent and established Matthew's visitation schedule.

A month later, Matthew filed a contempt motion, alleging that McKayla had interfered with his visitation. He moved to modify the parenting plan on October 24, 2008, alleging that he was concerned for his sons' safety because McKayla had twice been the victim of domestic violence by a boyfriend, with at least one incident occurring after entry of the August 2008 parenting plan. Matthew asked for a temporary parenting plan designating him as the primary residential parent.

On the day of the contempt hearing, McKayla filed an affidavit of prejudice against Judge Edwards. He denied the affidavit of prejudice on the contempt motion and ordered McKayla to comply with the 2008 parenting plan under penalty of contempt. Judge Edwards acknowledged that McKayla had also filed an affidavit of prejudice in the modification proceeding, but he did not grant or deny it.

On November 3, 2008, Judge F. Mark McCauley presided over the adequate cause hearing on Matthew's motion to modify the 2008 parenting plan. Judge McCauley declined to make an adequate cause determination at the time but appointed a GAL to investigate whether there was adequate cause for a trial. He continued the hearing for 30 days to allow the GAL to provide an oral report.

Judge Edwards presided over the resulting hearing on May 8, 2009. The GAL gave her report, and the court set a review hearing for August 7. On August 7, Judge Edwards signed an agreed parenting plan that allowed McKayla to retain primary custody.

During a scheduled review hearing on February 5, 2010, the GAL raised issues of immediate concern regarding the children's psychological and physical health and safety. Judge Edwards temporarily amended the parenting plan and granted Matthew primary residential custody pending a testimonial hearing. On April 30, 2010, Judge Edwards entered an order modifying the parenting plan that granted Matthew primary custody of the boys and ordered McKayla to pay child support. The order stated that McKayla's psychological issues and anger needed to be addressed before she could effectively co-parent her sons. Judge Edwards entered subsequent orders finding McKayla in contempt of the 2010 parenting plan that culminated in her serving jail time.

McKayla appealed the 2010 orders temporarily amending and then modifying the parenting plan. *In re Marriage of Smith*, noted at 162 Wn. App. 1032 (2011). In a decision filed June 28, 2011, we held that McKayla had filed a timely affidavit of prejudice that divested Judge Edwards of authority to rule on the motion to modify the 2008 parenting plan. Accordingly, we vacated the 2009 and 2010 parenting plans and remanded for further proceedings before a

different judge. We also found it unnecessary to review the 2010 order temporarily amending the parenting plan.

McKayla immediately filed for welfare benefits, stopped the child support order imposed against her, changed the boys' primary care providers, and made medical appointments for them with different doctors without consulting Matthew. She did so under the apparent belief that our decision invalidated all of the earlier custody rulings except the 2008 parenting plan that gave her primary residential custody. In a hearing before Judge McCauley on July 11, 2011, Matthew maintained that our decision did not alter the 2010 order granting him temporary custody and asked the court to uphold that order. The GAL stated that she had "very serious concerns" about McKayla and supported Matthew's request. Report of Proceedings (RP) (July 11, 2011) at 9. Judge McCauley ratified the 2010 order pending a full testimonial hearing.

At a hearing before Judge Gordon Godfrey on August 1, 2011, the trial court found that there was adequate cause for a modification hearing. The GAL subsequently filed a report in which she asserted that the earlier rulings regarding custody were appropriate and likely would not have differed had another judge applied the law to the facts. The GAL contended that McKayla's questionable conduct had escalated since this court's decision, and she recommended that the children be placed in the primary residential custody of Matthew and that McKayla be required to undergo a psychological evaluation and complete a parenting class.

On August 18, the trial court held a hearing at which the GAL, McKayla, and Matthew testified. The parties then debated whether the matter was properly before the trial court as a motion to modify the 2008 parenting plan and whether the 2010 order giving Matthew temporary custody remained in effect.

No. 43812-7-II

On January 30, 2012, the trial court issued an order clarifying that the case was properly before it as a motion to modify the 2008 parenting plan.[2] That order referenced the parties' agreement that Matthew would retain primary residential custody pending an additional evidentiary hearing to update the trial court on the case.

Before the March 2012 hearing, Dr. Mark Whitehill conducted a psychological evaluation of McKayla and filed a sealed report. Dr. Whitehill testified about his evaluation and his recommendation that McKayla engage in 18 to 24 months of intensive psychotherapy. McKayla and Matthew also testified at the March hearing, as did members of their families and the GAL.

The trial court ruled that McKayla had experienced a substantial change in personality after entry of the 2008 parenting plan and that Dr. Whitehill's report had revealed information about her that was not known in 2008. The court modified the 2008 parenting plan to give Matthew primary residential custody, with McKayla receiving visitation every other weekend. The trial court ordered McKayla to pay back child support of $50 per month for the last two years and declined to award attorney fees to either party.

McKayla then filed a pro se motion to remove the GAL, as well as affidavits of prejudice against all three Grays Harbor County judges. The trial court denied the motion and affidavits,

---

[2] A brief describing this order is part of the appellate record, but the order itself is not. We may take judicial notice of the order despite this deficiency. *Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89, 98, 117 P.3d 1117 (2005).

5

No. 43812-7-II

and it filed an order modifying the parenting plan and the modified parenting plan on June 28, 2012.[3]

McKayla now appeals several of the orders in this proceeding.

ANALYSIS

A. Orders Preceding 2012 Modified Parenting Plan

McKayla challenges the 2010 order granting Matthew temporary primary custody of the children, as well as the 2011 order ratifying that order. She also challenges the 2009 and 2010 parenting plans. We do not address these challenges.

McKayla challenged the 2010 order in her earlier appeal. We did not find it necessary to address that order after invalidating the July 2009 agreed parenting plan and the April 2010 modified parenting plan. On remand, the trial court ratified the 2010 order after a testimonial hearing. The trial court then issued an order clarifying that the matter was before the court on a motion to modify the 2008 parenting plan and referenced in the order the parties' agreement that Matthew would retain primary residential custody pending a decision on the motion to modify. McKayla does not now challenge the order setting forth that agreement. Consequently, she has waived any challenge to the order temporarily granting Matthew primary custody. Moreover, the 2012 order modifying the parenting plan has supplanted the prior temporary orders. Thus, we will not consider McKayla's challenges to the prior orders or to the parenting plans that we have already vacated.

---

[3] The order modifying the parenting plan is not part of the appellate record, but we may take judicial notice thereof. *Spokane Research & Defense Fund*, 155 Wn.2d at 98.

6

B. 2012 MODIFIED PARENTING PLAN

McKayla also challenges the 2012 modified parenting plan. She asserts that the trial court lacked authority to enter that plan and did so without complying with several statutory requirements.

We begin our review by observing that trial court decisions in dissolution proceedings will seldom be changed on appeal. *In re Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990); *In re Parentage of Jannot*, 110 Wn. App. 16, 21, 37 P.3d 1265 (2002), *aff'd*, 149 Wn.2d 123, 65 P.3d 664 (2003). The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the trial court's part. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). We will affirm the trial court's decision unless no reasonable judge would have reached the same conclusion. *Landry*, 103 Wn.2d at 809-10.

It is well settled that trial courts have authority to modify parenting plans if certain statutory criteria are satisfied. *In re Marriage of Stern*, 57 Wn. App. 707, 711, 789 P.2d 807, *review denied*, 115 Wn.2d 1013 (1990); RCW 26.09.260, .270. "The courts' powers, therefore, are limited to those which may be inferred from a broad interpretation of the legislation that governs the proceeding." *Stern*, 57 Wn. App. at 711. To justify a full hearing on a petition to modify a residential schedule, the petitioner must demonstrate that adequate cause exists. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 104, 74 P.3d 692 (2003); RCW 26.09.270. Along with the motion to modify, the petitioner must submit affidavits with specific relevant factual allegations that, if proved, would permit a court to modify the parenting plan under RCW 26.09.260. *Tomsovic*, 118 Wn. App. at 104. If the trial court finds that the affidavits establish a prima facie case, it sets a hearing date on an order to show cause why the requested modification

should not be granted. *Tomsovic,* 118 Wn. App. at 104; RCW 26.09.270. The primary purpose of the adequate cause requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing. *In re Marriage of Adler,* 131 Wn. App. 717, 724, 129 P.3d 293 (2006), *review denied,* 158 Wn.2d 1026 (2007).

McKayla now argues that there was no adequate cause hearing and no entry of findings of fact to support the conclusion that adequate cause for a full modification hearing existed. We disagree and conclude that the August 1 hearing was sufficient to satisfy the requirements of RCW 26.09.270 as an adequate cause hearing. Written findings of fact and conclusions of law were not required. *In re the Marriage of Kinnan,* 131 Wn. App. 738, 750, 129 P.3d 807 (2006). The trial court based its adequate cause finding on the pleadings and the "extensive record" in the file. Clerk's Papers (CP) at 18. Given the history of this case, which included a temporary modification of the children's primary residential placement, the trial court did not abuse its discretion in making the adequate cause determination.

McKayla next contends that the trial court failed to make findings of fact and conclusions of law showing that the statutory criteria for modifying a parenting plan were satisfied. RCW 26.09.260(1) sets forth a general standard for modification:

> [T]he court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

*In re Marriage of Watson,* 132 Wn. App. 222, 230, 130 P.3d 915 (2006). Subsection (2) of the statute then establishes a presumption against changing a previously decreed residential schedule:

8

In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless: . . . (c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

*Watson*, 132 Wn. App. at 231. Therefore, under RCW 26.09.260, a modification of custody is permissible only when there is sufficient evidence to support a finding that (1) there has been a change in circumstances; (2) the child's best interests will be served by modification; (3) the present environment is harmful to the child's well-being; and (4) the harm caused by the change is outweighed by the advantage of a change. *Anderson v. Anderson*, 14 Wn. App. 366, 368, 541 P.2d 996 (1975), *review denied*, 86 Wn.2d 1009 (1976). The trial court's failure to make findings that reflect the application of each relevant factor is error. *Kinnan*, 131 Wn. App. at 752.

In addition, RCW 26.09.191(3) provides that a court may restrict a parent's contact with a child if it finds that the parent's involvement or conduct may have an adverse effect on the child's best interests. This adverse effect may be demonstrated by a long-term emotional impairment that interferes with parenting functions or by an abusive use of conflict that creates the danger of serious damage to the child's psychological development. RCW 26.09.191(3)(b),(e); *Watson*, 132 Wn. App. at 231-32.

In its order modifying the parenting plan, the trial court expressly found that each factor in RCW 26.09.260 justified a modification. The court then added these findings:

[McKayla] has demonstrated extremely detrimental behavior including refusal to follow court orders resulting in further conflict to parties in this litigation;

[S]he has failed to follow appropriate direction of the guardian ad litem and verbally profanely abused the guardian ad litem and her office staff;

[She has] engaged in inappropriate behaviors at transfers of the children; and she has delayed, prevented and refused proper health care for the children against medical advice and without good cause.

The health care issue has resulted in [McKayla] significantly abus[ing] health care decision making and inappropriately obtain[ing] health care for the children against court orders;

[S]he has been unwilling or unable to allow the children to participate in extracurricular sports.

Additionally on March 1, 2012, Dr. Mark Whitehill completed a psychological evaluation and provided a diagnosis (incorporated herein by reference and ordered to remain SEALED). This evaluation was something neither the parties nor the court were aware of at the entry of the August 15, 2008 Parenting Plan, and the court can take it into consideration in making its decision. Dr. Whitehill's March 1, 2012 evaluation report is included herein as [a] finding of fact. [McKayla] is in need of long term intensive psychotherapy. [McKayla's] psychological condition was unknown to the Court and the parties at [the] time of the previous parenting plan's entry.

CP at 144-45.

The accompanying parenting plan stated that McKayla has had an adverse effect on the children's best interests because of her long-term emotional impairment and her abusive use of conflict. In addition to granting Matthew primary residential custody, the modified plan restricted McKayla's decision-making authority and required her to obtain long-term psychotherapy from a GAL-approved therapist and complete a college-level course on parenting.

McKayla contends that there was no substantial change in circumstances because the parties' inability to co-parent and communicate was anticipated in the 2008 parenting plan. The trial court must base its determination of a substantial change in circumstances on facts unknown to the court at the time of the prior decree or plan or arising since entry of the decree or plan. *Tomsovic*, 118 Wn. App. at 105. Unknown facts include those facts that were not anticipated by the court at the time of the prior plan. *Tomsovic*, 118 Wn. App. at 105.

Here, the trial court cited Dr. Whitehill's diagnosis and recommendation of 18-24 months of intensive psychotherapy as new information that satisfied the significant change in circumstances requirement. Dr. Whitehill testified that McKayla has personality traits that warrant clinical attention, "especially given their potential ramifications for parenting." 1 RP at 13.

The GAL explained that she recommended a psychological evaluation of McKayla after things "took a turn south" following entry of the 2009 parenting plan. 1 RP at 135.

> I did not want to believe that anyone would intentionally be conducting themselves the way [McKayla] was conducting herself; you just wouldn't do that if things were right. I wanted to give her an opportunity to be evaluated to see if there was some chemical or mental health issue that could be addressed that could be treated, that would explain the behaviors. Otherwise, it meant that she was just nasty because she wanted to be, and I didn't want to believe that about her. I saw, and I still do see in [McKayla], the core of what is a good mom. But all of her interactions had become so abhorrent, so hostile, so outrageous, that you couldn't reach that core, and I wanted to give her a tool to improve.

1 RP at 135.

Given this testimony, substantial evidence supports the trial court's finding that the changes in McKayla's behavior, coupled with Dr. Whitehill's 2012 evaluation disclosing personality disorders that warranted treatment, satisfied the substantial change in circumstances requirement. *See In re Marriage of Bernard*, 165 Wn.2d 895, 903, 204 P.3d 907 (2009) (we will uphold a trial court's findings of fact if substantial evidence supports them).

We also find substantial evidence to support the trial court's finding that the children's best interests were served by their primary residential placement with Matthew because of McKayla's detrimental behavior, which included her emotional issues and abusive use of conflict. During her testimony in 2012, McKayla acknowledged that she had had seven

11

attorneys since filing for divorce in 2006. She admitted that she would strip the boys of their clothing after visits with Matthew to determine whether they had any signs of physical abuse. She acknowledged that a boyfriend had assaulted her and that she had dated a sex offender after entry of the 2008 parenting plan. She conceded that she had used obscene gestures against Matthew's girlfriend in court and had thrown rocks at her car after a transfer of the children. She also admitted that she had taken the boys to the emergency room at least three times after a court order prohibited her from making regular medical appointments for the boys. Finally, she acknowledged being verbally abusive toward the GAL.

Matthew described several problems that occurred after entry of the 2009 agreed parenting plan. He testified that McKayla signed the boys up for a church class on the evening that he was to have an evening phone call with them; sent the children to him with an unmarked bottle of prescription medication that lacked dosage information; prevented RS from having dental surgery she had requested by arguing that he was sick, even though a physician had cleared him for surgery; interfered with vaccinations that the pediatrician recommended; filed several unfounded complaints against Matthew with Child Protective Services; talked to CS about child support issues; and refused to take the boys to extracurricular activities that were scheduled during her time with them.

The GAL testified that after the 2009 agreed parenting plan was entered, McKayla became very uncooperative and tried to sabotage Matthew's relationship with the children. McKayla also resisted taking the parenting class the GAL had recommended. 8-18 RP 37-38. The GAL had become more concerned over time about the children. The GAL stated that she saw actual harm to the boys as a result of McKayla's actions, behaviors, and attitudes:

I think it hit home most clearly when I saw [CS]. The damage that's been done already. The level of anger and frustration and confusion in that little boy, is only going to continue until this thing stops, and I am really worried that [RS] is going to do the same thing. I know these folks don't have much money, they are like a lot of folks really hit hard by this economy. So the resources that are available to get these kids, help are limited, but until these two bury the hatchet, these boys are really at risk. The constant CPS referrals, they have been through the examinations by doctors and law enforcement and social workers, the tugging and pulling can't be healthy, and we see the damage in court, in juvenile court every week, I don't want to see that for these two little boys, and [I] think the more stable home right now is [Matthew's]. I am not saying that [McKayla's] home couldn't be the most stable home in the future, but for right now, and for the last two years, it's been [Matthew].

1 RP at 146-47.

The record shows that the trial court entered the required findings of fact and conclusions of law needed to support the modified parenting plan. The record also shows that substantial evidence supports the court's findings regarding the statutory criteria for modification. The trial court did not abuse its discretion in modifying the parenting plan and giving Matthew primary residential custody.

C. BACK CHILD SUPPORT

In the conclusion of her brief, McKayla asks this court to reverse the order requiring her to pay back child support. Because she does not support this request with argument or citation of authority, we do not consider it further. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *Fabre v. Town of Ruston*, 180 Wn. App. 150, 164 n.7, 321 P.3d 1208 (2014); RAP 10.3(a)(6).

D. Motion to Remove Guardian ad Litem

McKayla also argues that the trial court erred in denying her pro se motion to remove the GAL, which she filed after the trial court entered the 2012 parenting plan. McKayla contended in her motion that the GAL was biased and unprofessional.

During her testimony, the GAL observed that once she made a recommendation in favor of one party in a case, she was perceived as biased by the other party. She maintained, however, that her job as a GAL was to make such recommendations:

> You can't be deaf, dumb, and blind. If you feel that the children are in danger, or there is harm, or it's not in their best[] interests, then you have to make a recommendation. It's very, very rare that you come in as a GAL, and I have done this in cases, and say, these are equally good, or equally bad people, and they should have equal time and equal responsibility. This is not how I perceive this case.

1 RP at 127.

The record shows that the GAL completed each request made by the trial court over the course of the proceedings and that she intervened on McKayla's behalf to obtain a continuance of court-ordered obligations. McKayla complains that the GAL never observed her interacting with the boys, but the GAL testified that McKayla refused to allow her to meet with the boys when they were with McKayla. The record does not support McKayla's claim of bias or lack of professionalism, and we see no abuse of discretion in the trial court's refusal to remove the GAL. *See In re Marriage of Bobbitt*, 135 Wn. App. 8, 23, 144 P.3d 306 (2006) (applying abuse of discretion standard of review to motion to remove a GAL in title 26 RCW cases).

E. Affidavit of Prejudice

McKayla also contends that the trial court erred in denying the affidavits of prejudice she filed against all three Grays Harbor County judges. McKayla admits that she was attempting to

obtain a change of venue through these affidavits.[4]  However, McKayla never moved for a change of venue, and having filed an earlier affidavit of prejudice against Judge Edwards, she is not entitled to file further affidavits in this case.  RCW 4.12.050.

F.  ATTORNEY FEES

Matthew seeks an award of attorney fees on appeal, but he cites no authority supporting that request.  Accordingly, we deny his request for fees on appeal.  *See Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998).

We affirm the 2012 modified parenting plan, reject McKayla's additional requests for relief, and deny Matthew attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Hunt, J.

_____
Bjorgen, A.C.J.

---

[4] She asks for a change of venue to Pacific County in her appellate brief, but we cannot grant such relief in the first instance.