[No. 22733-5-I.   Division One.   April 30, 1990.]

*In the Matter of the Marriage of* LAURA LELIA
STERN, *Respondent, and* HAROLD LOYD
SINGLETON, *Appellant.*

*David J. Ordell,* for appellant.

*Lowell Halverson* and *Halverson & Strong,* for respondent.

BAKER, J.—Harold Loyd Singleton appeals from an order modifying a decree of dissolution and awarding sole legal and residential custody of his two children to his former wife, Laura Lelia Stern. Two primary issues are raised on appeal: (1) was modification of the parties' original joint custody arrangement sufficiently supported by the findings of fact, and (2) was Singleton properly ordered to pay an

income–proportionate share of the minor childrens' private school education expenses. Stern challenges the adequacy of Singleton's appeal on procedural grounds and seeks attorney fees.

# I
## FACTS

The parties had been married for 6 years when their marriage was dissolved in 1986. By agreement, the decree of dissolution established joint legal and residential custody of the two children, who are now aged 6 and 8. During the first year after the decree, residential custody was to alternate quarterly between the parties, with the noncustodial parent having liberal rights of visitation. This arrangement functioned smoothly for approximately 6 months.

In March 1987, Stern noticed a large bruise on the younger daughter's bottom. She questioned the elder child and learned that the younger daughter had been spanked by her father. She also learned that the father had used a favorite stuffed animal to wipe up urine from the floor after the younger daughter had wet herself.

Stern confronted Singleton, and he admitted both incidents occurred. During later counseling, he also disclosed two previous incidents in which the stuffed toy was used similarly as a method of toilet training. Singleton assured Stern that such incidents would not recur. He subsequently enrolled in and completed both parenting and anger management classes.

The March incident precipitated a period of vigorous antagonism and noncooperation between the parties. Ultimately, Stern brought this action to modify the decree, seeking sole legal and residential custody. Singleton counterpetitioned, asking the court to award exclusive custody to him because the present joint custodial environment had become detrimental to the children's welfare.

A temporary order was entered which maintained the parties' joint legal custodial status but vested residential care of the children in Stern. After a trial, the court entered

a decree of modification in favor of Stern. This appeal followed. We affirm in part, reverse in part, and remand to the trial court for disposition consistent with this opinion.

## II
### PROCEDURE

Stern argues this court should not consider the merits of Singleton's appeal because Singleton failed to comply with RAP 10.3(g) and 10.4(c).

RAP 10.3(g) requires separate assignments of error for each challenged finding and further requires that each assignment include reference to the finding by number. RAP 10.4(c) requires a party to set out the material portions of the challenged finding in its brief or an appendix thereto. The appropriate remedy for noncompliance is sanctions, which may include a refusal to consider the claimed errors. *See Thomas v. French,* 99 Wn.2d 95, 100, 659 P.2d 1097 (1983).

The intended purpose of these rules is to add order to and expedite appellate procedure by eliminating the laborious task of searching through the record for such matters as findings claimed to have been made in error. *See French,* at 100. While appellant did not set forth verbatim findings and conclusions in his opening brief, he cured this defect in his reply brief, obviating any potential inconvenience to this court. Moreover, Stern offers no evidence suggesting that she has been prejudiced in any way by appellant's error. Thus, in the exercise of this court's discretion, pursuant to RAP 1.2(b) and RAP 18.9, we will consider the appeal on the merits. Sanctions are not appropriate. *See Wiseman v. Goodyear Tire & Rubber Co.,* 29 Wn. App. 883, 884, 631 P.2d 976 (1981); *Minert v. Harsco Corp.,* 26 Wn. App. 867, 870, 614 P.2d 686 (1980).

## III
### MODIFICATION OF CUSTODY

Singleton contends the trial court erred by modifying the custodial provisions of the decree of dissolution without

finding that the custodial environment was detrimental to the physical, mental, or emotional health of the parties' minor children. We disagree.

Procedures relating to the modification of a decree of dissolution are statutorily prescribed. The courts' powers, therefore, are limited to those which may be inferred from a broad interpretation of the legislation that governs the proceeding. *In re Marriage of Soriano,* 44 Wn. App. 420, 421, 722 P.2d 132 (1986), *review denied,* 107 Wn.2d 1022 (1987); *Arneson v. Arneson,* 38 Wn.2d 99, 227 P.2d 1016 (1951).

Former RCW 26.09.260[1] sets forth the criteria for modification of custody awards and provides in relevant part that:

> (1) The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior decree unless:
> (a) The custodian agrees to the modification;
> (b) The child has been integrated into the family of the petitioner with the consent of the custodian; or
> (c) The child's present environment is detrimental to his physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Compliance with these criteria is mandatory. Failure by the trial court to make findings that reflect the application of each relevant factor is error. *Anderson v. Anderson,* 14 Wn. App. 366, 368, 541 P.2d 996 (1975), *review denied,* 86 Wn.2d 1009 (1976); *In re Marriage of Murray,* 28 Wn. App. 187, 622 P.2d 1288 (1981); *In re Marriage of Raugust,* 29 Wn. App. 53, 627 P.2d 558 (1981). In the context of joint custody, the inquiry under the statute is in part whether

---

[1]In 1987 the Legislature amended RCW 26.09.260. However, because the entry of the decree of dissolution in the instant case predates the amendment, the changes therein are not applicable to this appeal. *See* RCW 26.09.907.

there has been a change in circumstance of the "'*joint custodians* as established by the decree'". *In re Marriage of Murphy,* 48 Wn. App. 196, 198–99, 737 P.2d 1319 (1987).

The primary concern of the courts in custody matters is always the welfare of the child. *In re Rankin,* 76 Wn.2d 533, 537, 458 P.2d 176 (1969). Custodial changes are viewed as highly disruptive for the children. *In re Marriage of Roorda,* 25 Wn. App. 849, 851, 611 P.2d 794 (1980). Both statute and case law demonstrate a strong presumption in favor of custodial continuity and against modification. Former RCW 26.09.200 *et seq.*; *In re Marriage of Thompson,* 32 Wn. App. 418, 421, 647 P.2d 1049 (1982); *Roorda,* at 851; *Anderson,* at 368.

In the instant case, whether or not the trial court set forth findings which sufficiently reflect the mandate of RCW 26.09.260 turns largely upon the meaning of finding of fact 1.12 which provides:

> ·The Court finds that the custodial arrangement established by the Decree of Dissolution is not harmful to the physical, mental or emotional health of the children.

Singleton argues that this finding is at odds with the trial court's decision to award custody to Stern. He asserts that finding 1.12 must be read to negate the requirement that the court find a detriment as set forth in RCW 26.09.260. This interpretation fails, however, to consider the context within which the finding was made and fails to consider the findings in their entirety. Although finding of fact 1.12 when examined by itself could be read as an assessment of the joint custodial relationship in the present tense, when the finding is read in context, it is clear that the trial court was not endorsing the present state of the joint custodial environment.

■■ It is well established that the interpretation or construction of findings of fact and conclusions of law presents a question of law for the court. *Callan v. Callan,* 2 Wn. App. 446, 448, 468 P.2d 456 (1970). In *Callan* an action was brought to determine obligations under a divorce decree.

The question presented involved the interpretation of language found in two paragraphs of the decree. This court stated:

> The general rules of construction applicable to statutes, contracts and other writings are used with respect to findings, conclusions and judgment. These rules include the rule that the intention of the court is to be determined from all parts of the instrument, and that the judgment must be read in its entirety and must be construed as a whole so as to give effect to every word and part, if possible. The authorities . . . refer to two canons of construction, here particularly pertinent (1) that the court is not confined to ascertaining the meaning of a single word or phrase without regard to the entire judgment, and, if necessary, the judgment roll, and (2) that provisions in a judgment that are seemingly inconsistent will be harmonized if possible.

(Citations omitted.) *Callan,* at 448–49. We added "[i]t is not to be assumed that a court intended to enter a judgment with contradictory provisions and thus impair the legal operation and effect of so formal a document." *Callan,* at 449.

The trial court's findings of fact are sequential. They chronicle the significant events and circumstances that led to the petition and to the court's disposition. The meaning of finding of fact 1.12 is made clear by the next finding. Finding of fact 1.13, which qualifies finding of fact 1.12, provides:

> Although joint parenting between the parents was successful at the beginning of their divorce, joint custody has not operated since the spanking incident.

The unequivocal inference is that after the spanking incident occurred, the joint custodial arrangement had not been successful. In our opinion, this finding confines the "not harmful" language in the finding above to the period between entry of the original decree and the March incident. It is a statement of past rather than present condition.

Additionally, references are made throughout the findings and conclusions concerning the decline of the custodial

arrangement established by the decree of dissolution. Finding of fact 1.11 provides in relevant part:

> [T]hat while both parents are committed, active and competent parents for their daughters, the historical and present level of conflict between the parents makes continuation of the joint custody arrangement unworkable.

At conclusion of law 1.1, the court stated in relevant part:

> The Court is also mindful of RCW 26.09.260 and finds that changes have occurred in the circumstances of the children and the Respondent (joint custodian) and that modification of the prior Decree is necessary to serve the best interests of the children.

Additionally, the court concluded at 1.2:

> The conflict between the parents, arising primarily from the clearly excessive and inappropriate discipline the father administered to the child, Robin, warrants a change in the custodial relationship between the parents. The harm that is likely to be caused by perpetuating a clearly unworkable joint custody arrangement is outweighed by the advantage to both children to live in a less conflictual environment. The only manner in which that can be accomplished is by awarding the mother sole custody, both physical and legal.

When finding of fact 1.12 is read in combination with the other findings of fact and conclusions of law, Singleton's interpretation does not logically follow. We think a more reasonable interpretation of the finding is that the trial court determined the joint custodial arrangement was not harmful only as it existed prior to the spanking incident.

Singleton further argues that because the trial court found both parties to be fit and able parents, and that there existed little likelihood of a repeat of the incidents which gave rise to the petition for modification, no detriment to the children's well–being could be found in the original custodial arrangement. Singleton cites conclusion of law 1.7 in support:

> The court also finds, however, that both parents would be fit and proper persons to have custody of their daughters and each would serve their daughters' interests well. Both parents desire custody and both would provide visitation to the other. The children's views are not able to be considered because they are so young. However, they are bonded to both parents and have

expressed to others a desire to be with both parents. They have developed significant and important relationships with both parents and have, apparently, adjusted well with both parents, notwithstanding the conflict between them. The Court finds there is little likelihood of a repeat of the incidents giving rise to this Petition.

Singleton's argument, however, steers wide of the real issue. Certainly, parental fitness is a primary concern of the court when considering modification of residential and legal custody. See *Anderson,* at 366. In a joint custody situation, however, the court must be equally mindful of the "joint custodial environment" and whether changed circumstances have rendered joint custody unworkable and detrimental.

In *In re Marriage of Murphy,* 48 Wn. App. 196, 737 P.2d 1319 (1987), a substantial change in circumstances was occasioned by the move of one joint custodial parent to another state. Although the trial court specifically found both parents were fit and maintained a good relationship with their child, it also found that alternating physical custody under the changed conditions, particularly where the child was approaching school age, was not feasible. The court therefore determined that the "present environment" was detrimental to the child. *Murphy,* at 199.

*Murphy* establishes that a finding of detriment to the child in his or her present environment need not be based upon the parenting of either party, but may arise from a change in the joint custodial environment. Such is the situation in the instant case. The relationship between the parties decayed so that the children's well-being was at risk. Substantial evidence in the record supports the trial court's determination that the joint custodial arrangement was no longer workable. The trial court had before it the reports of Alice Probert, a family court services social worker, and Dr. Dunne, a court-appointed child psychiatrist. Ms. Probert reported "[b]ecause of the high level of conflict and strong difference, [of opinion about management and care of the children] the children's care has been impacted negatively."

Dr. Dunne concluded ". . . thus the thought [of] joint parenting would be an optimal recommendation. However, given the historical and present level of conflict between the parents, this recommendation would be unworkable at the present time." Parental fitness is but one part of the analysis when considering modification in a joint custody situation. In this case, it is not determinative.

Singleton maintains, however, that even if we were to affirm the trial court's finding that the conflict and lack of cooperation between the parents made the joint custodial arrangement unworkable, such a finding is not a sufficient ground upon which to modify the decree. We would not readily countenance a situation where one party undermined a joint custodial arrangement simply by refusing to cooperate, or by claiming an inability to get along with or trust the other party. But that is not the situation here. Ample testimony detailed the parties' history of conflict and the damaging change in the joint custodial environment as a result of the March incident. In our opinion, unworkability in this case directly relates to the welfare of the children involved. Changes in the conditions or circumstances between Singleton and Stern would have been of little moment had they not affected the welfare of the children. The record contains substantial evidence to support the court's finding that the best interests of the children required a change in custody. Fairly read, the court's findings reflect the application of the factors set forth in RCW 26.09.260. The order modifying custody is affirmed.

## IV

### MODIFICATION OF SUPPORT

As a part of its decree modifying custody, the trial court modified support. In addition to monthly child support, the order requires appellant to contribute a percent of the private educational expenses of the children. Conclusion of law 3.3 provides as follows:

> The parents should contribute to the child care and private education expenses of their children in the same proportion and in the same ratio as indicated by their respective incomes

presently 59% (Respondent) and 41% (Petitioner). There appears to be little difference in this incremental expense whether the children are in day care or attending private Catholic school and, indeed, the schooling expense may be less than maintaining the children in public school and then having to pay for before and after school child care.

Singleton assigns error to this finding[2] and argues it lacks evidentiary support in the record. We agree.

"In Washington, findings of fact supported by substantial evidence will not be disturbed on appeal." *Bering v. Share,* 106 Wn.2d 212, 220, 721 P.2d 918, *cert. denied,* 479 U.S. 1050, 107 S. Ct. 940, 93 L. Ed. 2d 990 (1987); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959). If the record contains evidence of "sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise", substantial evidence exists. *In re Snyder,* 85 Wn.2d 182, 185–86, 532 P.2d 278 (1975).

The amount of child support rests in the sound discretion of the trial court. This court will not substitute its own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances. *In re Marriage of Nicholson,* 17 Wn. App. 110, 119, 561 P.2d 1116 (1977).

In the instant case, the trial court made its award on the basis that no measurable difference existed between the costs of day care and private school. The only testimony regarding comparative educational costs was that at the time the eldest child was in kindergarten and attending school half days, it was economically practical to place her in a full-day private school program because the costs were roughly equaled by the reduced cost of day care. There was no testimony regarding, and it appears that the trial court did not consider, the tuition and day care cost differential when both children were in school full time. Nor does it

---

[2]Although labeled a conclusion of law, the conclusion is primarily a finding of fact.

appear that the trial court considered the need, if any, that the children be placed in a private rather than public school.

We have found no cases in Washington specifically addressing the minor child/private school tuition issue. The case of *Smith v. Pontius,* 119 Wash. 211, 205 P. 381 (1922), is, however, factually analogous. In *Pontius,* the court held that a divorced husband was not liable to the wife for expenses in maintaining an insane child in a private asylum. There, an ex-spouse brought an action seeking reimbursement for sums expended by her in support and maintenance of the parties' mentally ill child. The child was adjudged insane shortly after reaching the age of majority. At that time he was committed to the state-run institution in Steilacoom. Several years later the mother petitioned for the child's parole. Against the wishes of the father, the petition was granted. Thereafter, the mother kept the child in private sanitariums until she was financially no longer able to do so. The court ruled that where a child had been regularly committed to a state institution and there was no showing that the child was not properly treated while in the State's care, nor that in a private sanitarium the child would receive better care, it was not necessary to the child's welfare that he reside in a private institution. Thus, the money expended for the child's maintenance was itself not reasonably necessary and the father was under no legal obligation to pay. *Pontius,* at 213-14.

A similar rationale was offered by a California court with regard to the noncustodial parent's obligation to provide for the private education of his or her minor children. In *In re Marriage of Aylesworth,* 106 Cal. App. 3d 869, 165 Cal. Rptr. 389, 394 (1980), the court identified two primary conditions which must exist prior to an award for private education expenses: demonstrated need of the child, and the parent's ability to pay. *See Straub v. Straub,* 213 Cal. App. 2d 792, 29 Cal. Rptr. 183 (1963). Need may be assessed by determining whether the child has equal access to a public

school education, and, if so, whether due to the peculiar circumstances of the child it is in his or her "best interests" to instead attend private school.

In *Aylesworth,* one of the parties' children was epileptic, a condition which prior to receiving regular medication caused him to miss significant time from school, and when in attendance, to be the subject of ridicule from his classmates. The child was placed by the mother in a private school. In upholding the trial court's grant of tuition costs in favor of the mother, the appellate court ruled:

> [I]t is a legitimate and reasonable inference from respondent's testimony that the closer personal attention afforded Duke at Crossroads School is of personal benefit to him in helping to alleviate his past anxieties related to school, and in helping him to cope with and adjust to his need for medication and all the attendant psychological problems accompanying such an illness in a young man. Moreover, this finding is not inconsistent with the court's refusal of [the mother's] request for private tuition for Duke's sister, Cynthia, who has never attended private school and shows no need or evidence that such attendance would be of a more personal benefit to her than it would be to any child in general.

*Aylesworth,* at 879.

In the case at bench, there are no findings regarding the need for a private education. Nor are there findings that any benefit shall inure to these children from attending a private school that will not inure to them from attending a public one. The trial court did find that there was "little difference" between the costs of attending private school full–days and attending public school half–days with the remainder spent in day care. However, no finding was made comparing the costs of tuition and day care with both children enrolled in school full time.

Conspicuously absent from Stern's brief is any mention of the comparative costs between public and private schooling with or without day care. Stern concedes, however, that with both children in school full time, day care costs will diminish to a fraction of that required at the time of the modification.

Assuming it to be true that day care costs with both children in school full time are nominal, what remains is the cost differential between public and private schools. Singleton, in his motion for reconsideration before the trial court, set forth a tuition and day care cost schedule that plainly evidenced an appreciable difference in private school expenses over that of public schools. In the absence of a showing of need or want of availability of public schooling, no substantial evidence can be found to support the trial court's award. As a result, the court exceeded the limits of its discretion.

There is no per se prohibition against the award of private school tuition for a minor child. Factors such as family tradition, religion, and past attendance at a private school, among others, may present legitimate reasons to award private school tuition expenses in favor of the custodial parent. However, the court's findings do not address such circumstances. Where acceptable public schools are available, and there is no showing of special circumstances justifying the need for private school education, the noncustodial parent should not be obligated to pay for the private education of his or her minor children.

The grant of an income–proportionate contribution to the children's private education expenses was error. As to that portion of the court's decree, we reverse.

## V
### ATTORNEY FEES

Stern requests her costs and attorney fees on appeal. This court may award attorney fees under RCW 26.09.140 after specifically considering the financial resources of both parties. *In re Marriage of Belsby,* 51 Wn. App. 711, 719, 754 P.2d 1269 (1988). We must then balance the needs of one party against the other party's ability to pay. *In re Marriage of Young,* 18 Wn. App. 462, 466, 569 P.2d 70 (1977). Additionally, we may also consider the merits of the appeal itself. *Chapman v. Perera,* 41 Wn. App. 444, 455–56, 704 P.2d 1224, *review denied,* 104 Wn.2d 1020 (1985).

■ Contrary to Stern's claim, the appeal was neither frivolous nor devoid of merit. However, the record before this court is lacking sufficient evidence as to the relative needs and abilities of the parties. We therefore remand this issue to the trial court to determine whether costs and fees are appropriate and, if so, in what amount.

WEBSTER and WINSOR, JJ., concur.

Review denied at 115 Wn.2d 1013 (1990).