# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01613-SCT

*GEORGE WADDELL NEVILLE*

*v.*

*TINA FOLEY (NEVILLE) BLITZ*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/22/2011 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE W. NEVILLE |
| ATTORNEY FOR APPELLEE: | MICHAEL J. MALOUF |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 09/26/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., PIERCE AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.　George Neville filed a petition for modification of a final judgment of divorce seeking to have his ex-wife, Tina Blitz, pay their daughter's college expenses. The chancellor ordered the parties to divide the college expenses equally, after scholarships and a monthly housing stipend from the Post-9/11 GI Bill were deducted. George, who had assigned his Post-9/11 GI Bill benefits to his daughter, appealed and asserted that the chancellor had erred by dividing the monthly housing stipend between Tina and himself.

## Facts and Procedural History

¶2.　George Neville and Tina Blitz divorced in 1996. Their only child, Joyce, was five years old at that time, and the final judgment of divorce did not make provisions for her

college expenses. George serves as a member of the Army Reserve and was mobilized in 2005. Because of his active duty, George became eligible for educational assistance through the Post-9/11 GI Bill, which included payment of college tuition, fees, books, and a monthly housing allowance.[1] Having the option of transferring his benefits to a family member, George transferred his benefits to Joyce.

¶3.    Joyce graduated from high school in 2010. Tina preferred that Joyce attend a state university, where she would have been eligible for in-state tuition. George encouraged Joyce to attend Southern Methodist University in Texas, where she could maximize the benefits from the Post-9/11 GI Bill.[2] Joyce chose SMU and began college in August 2010. George and Joyce agreed to save the $1,200 monthly housing allowance provided by the GI Bill so Joyce could use the money to pay for school in the future when the benefits ceased. Tina did not refuse to pay for Joyce's college entirely, but she committed to paying only half of what it would have cost for Joyce to attend a state university.

¶4.    In October 2010, George filed a petition for modification of the final judgment of divorce, asking the court to order Tina to pay half of Joyce's college expenses at SMU.

_____

[1] The Post-9/11 Veterans Educational Assistance Act of 2008 ("Post-9/11 GI Bill") went into effect August 1, 2009. *See* Pub. L. No. 110-252, Title V, § 5001 (June 30, 2008) (codified at 38 U.S.C. § 3301, *et seq.*).

[2] When Joyce started college in 2010, students attending private schools in several states, including Texas, were eligible for higher rates of tuition reimbursement. That discrepancy was remedied later, but students who had started college with the higher rates of reimbursement were "grandfathered" in at those higher rates. See Post-9/11 Veterans Educational Assistance Improvements Act of 2010, Pub. L. No. 111-377 (Jan. 4, 2011); Restoring GI Bill Fairness Act of 2011, Pub. L. No. 122-26 (Aug. 3, 2011). *See also* Congressional Research Service, *The Post-9/11 Veterans Educational Assistance Act of 2008 (Post-9/11 GI Bill): Primer and Issues* 9-10 (Sept. 21, 2012), http://www.fas.org/sgp/crs/misc/R42755.pdf (last visited Sept. 2, 2013).

Later, it became evident that George wanted Tina to pay all expenses that were not covered by the GI Bill, which he estimated to be $19,000 per semester. After a hearing, the chancellor entered a final judgment of modification on July 21, 2011. Therein, he held that, for the remaining three semesters before Joyce turned twenty-one (at which time neither party would be obligated to support Joyce or pay college expenses), her college expenses should be split equally between Tina and George, after Joyce's scholarship was applied. George was allowed to take full credit for the GI Bill benefits and to consider the benefits as payment for his half of Joyce's expenses. The chancellor held that they should continue to deposit the $1,200 monthly stipend into a savings account as they had been doing.

¶5. George filed a motion for reconsideration and for clarification, claiming that the chancellor's restriction on how the GI Bill benefits were used was a violation of federal law. The chancellor entered an amended final judgment of modification on September 22, 2011. He held that Joyce's expenses should be reduced by her scholarships, any loans or work-study aid that she might receive, and the $1,200 monthly stipend; then the remaining expenses were to be divided equally between George and Tina, with George taking full credit for all GI Bill benefits except the monthly housing allowance. George appealed, taking issue with the chancellor's appropriation of the $1,200 monthly housing stipend. George asserts that, by taking the monthly stipend off the top of Joyce's college expenses, the chancellor shared George's GI Bill benefits with Tina.

**Analysis**

¶6. George contends that federal law preempts state law with regard to the appropriation of Post-9/11 GI Bill benefits, and he asserts that the chancellor violated federal law by

3

dividing George's GI Bill benefits. A chancellor's findings of fact, if supported by substantial evidence, will not be disturbed "unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." ***Rogillio v. Rogillio***, 101 So. 3d 150, 153 (¶ 11) (Miss. 2012) (quoting ***Sanderson v. Sanderson***, 824 So. 2d 623, 625-26 (¶ 8) (Miss. 2002)). "A chancellor's conclusions of law are reviewed *de novo*." ***Lowrey v. Lowrey***, 25 So. 3d 274, 285 (¶ 26) (Miss. 2009) (citing ***Chesney v. Chesney***, 910 So. 2d 1057, 1060 (¶ 5) (Miss. 2005)).

¶7.     The Post-9/11 Veterans Educational Assistance Act of 2008, known as the Post-9/11 GI Bill, went into effect August 1, 2009. *See* 38 U.S.C. § 3301, *et seq*. (2011) The benefits provided by the Post-9/11 GI Bill include the cost of college tuition and fees, a stipend for books each semester, and a monthly housing stipend. 38 U.S.C. § 3313(c)(1) (2011). The service member entitled to the benefits is allowed to transfer a maximum of thirty-six months of benefits to a spouse or child. 38 U.S.C. § 3319(a)-(d) (2011). If a service member elects to transfer his or her benefits, the "[e]ntitlement transferred . . . may not be treated as marital property, or the asset of a marital estate, subject to division in a divorce or other civil proceeding." 38 U.S.C. § 3319(f)(3) (2011).

### A. Federal-Law Preemption

¶8.     George argues that federal law preempts state law as to the transfer and division of Post-9/11 GI Bill benefits. In the field of domestic relations, federal law preempts state law only if: "(1) Congress has positively expressed its intent to preempt the state law and (2) the state law does major damage to a clear and substantial federal interest." ***In re Guardianship of Holmes***, 965 So. 2d 662, 665 (¶ 9) (Miss. 2007) (quoting ***Clardy v. ATS, Inc. Employee***

4

*Welfare Benefit Plan*, 921 F. Supp. 394, 398 (N.D. Miss. 1996)). For the doctrine of preemption to be applied, a state law must exist to actually be preempted. George has not cited a relevant state law that should be preempted by the federal law pertaining to Post-9/11 GI Bill benefits. As the Post-9/11 GI Bill and benefits therefrom are a wholly federal issue, there are not any related state laws. Therefore, preemption is not an issue; rather, we must simply apply federal law. George's claim that federal law preempts state law regarding Post-9/11 GI Bill benefits is without merit.

### B. Division of Post-9/11 GI Bill Benefits

¶9. We previously have considered distribution of military disability benefits and military retirement pay in domestic relations cases. *See Mallard v. Burkart*, 95 So. 3d 1264, 1272 (¶ 21) (Miss. 2012); *Rennie v. Rennie*, 718 So. 2d 1091, 1095 (¶ 13) (Miss. 1998); *Hemsley v. Hemsley*, 639 So. 2d 909, 913 (Miss. 1994); *Newman v. Newman*, 558 So. 2d 821, 823 (Miss. 1990). But those cases dealt with the application of other federal laws pertaining to military benefits, such as the Uniformed Services Former Spouses' Protection Act, not the Post-9/11 GI Bill. The instant issue is one of first impression for the Court, and we have not found any cases from any jurisdiction directly addressing the specific issue at hand.

¶10. In the instant case, the chancellor held that Joyce's college expenses should be reduced by her scholarships and the $1,200 monthly housing stipend; then Tina and George were to split the remaining amount equally, with George taking full credit for all Post-9/11 GI Bill benefits except the housing stipend. George asserts that the chancellor's treatment of the monthly housing stipend violated Section 3319, which provides that benefits transferred to a spouse or child "may not be treated as marital property, or the asset of a

marital estate, subject to division in a divorce or other civil proceeding." 38 U.S.C. § 3319(f)(3) (2011). Tina maintains that the prohibition on treating transferred benefits as marital property is inapplicable, because the chancellor did not classify the stipend as marital property; thus, she maintains that the chancellor's decision did not constitute a division of the benefits. Tina also argues that, because George transferred the benefits to Joyce, the benefits belong to Joyce much like her scholarships; therefore, Tina asserts that taking the benefits off the top before dividing the remainder between the parents was appropriate.

¶11.    George earned the benefits at issue here long after the parties divorced, and neither party claims that the benefits are marital property. We agree that George's Post-9/11 GI Bill benefits were not marital property because they were not earned during the marriage; thus, they were not subject to division. *See* ***Wheat v. Wheat***, 37 So. 3d 632, 637 (¶¶ 14-15) (Miss. 2010); ***Hemsley***, 639 So. 2d at 915 (Miss. 1994). While the chancellor did not label the benefits as marital property, his instruction to take the benefits off the top of Joyce's expenses gave Tina a credit that she otherwise would not have had and resulted in George not getting full credit for all of the Post-9/11 GI Bill benefits. We find that the chancellor's decision effectively acted as a "division" of the benefits. Although the proceeding was not an original divorce proceeding, it was a "civil proceeding" pertaining to modification of a divorce decree. Therefore, we conclude that the chancellor's allocation of the housing stipend amounted to a division of the benefits in a civil proceeding, which is prohibited by Section 3319(f)(3).

¶12.    Tina's argument that the GI Bill benefits belonged to Joyce lacks merit. When benefits are transferred, the service member has the option to revoke the transfer at anytime. 38

6

U.S.C. § 3319(f)(2) (2011). Thus, the service member remains in control of the transferred benefits, and they still belong to him. The chancellor held that George was entitled to credit for the rest of the benefits – the payments for tuition, fees, and books – but the $1,200 monthly stipend was taken off the top of the expenses and not credited to George. All of the benefits should be treated equally. Because the GI Bill benefits still belong to George, he should be credited with all of them, and none of the benefits should be divided between George and Tina.

¶13.    We act in concert with the purpose of the Post-9/11 GI Bill by giving George credit for all of the benefits. In enacting the bill, Congress stated that service in the "Armed Forces ha[d] been especially arduous" since the terrorist attacks of September 11, 2001, and Congress explained the need for the bill as follows:

> (3) The United States has a proud history of offering educational assistance to millions of veterans, as demonstrated by the many G.I. Bills enacted since World War II. Educational assistance for veterans helps reduce the costs of war, assist veterans in readjusting to civilian life after wartime service, and boost the United States economy, and has a positive effect on recruitment for the Armed Forces.
> . . .
>
> (5) The people of the United States greatly value military service and recognize the difficult challenges involved in readjusting to civilian life after wartime service in the Armed Forces.
>
> (6) It is in the national interest for the United States to provide veterans who serve on active duty in the Armed Forces after September 11, 2001, with enhanced educational assistance benefits that are worthy of such service and are commensurate with the educational assistance benefits provided by a grateful Nation to veterans of World War II.

Pub. L. No. 110-252, Title V, § 5002 (June 30, 2008). The educational benefits provided by the Post-9/11 GI Bill aid in recruitment and rewarding service members for active duty. The

ability to transfer the benefits is an additional incentive meant "to promote recruitment and retention of members of the uniformed services." 38 U.S.C. § 3319(a)(2) (2011). Further, a service member who transfers the benefits must generally agree to continued years of service. *See* 38 U.S.C. § 3319(b)(1) (2011). The chancellor's allocation of the housing stipend failed to accord with the spirit and purpose of the Post-9/11 GI Bill.

¶14. George earned the GI Bill educational benefits through active-duty service in the Army Reserve, which occurred long after he and Tina divorced. The chancellor's allocation of the monthly housing stipend violated 38 U.S.C. § 3319(f)(3), because it constituted a division of the benefit between parties in a civil proceeding.

**Conclusion**

¶15. The chancellor found that George should take credit for the payment of Joyce's tuition, fees, and books from the Post-9/11 GI Bill, but not the monthly housing stipend. He ordered that the housing stipend be taken off the top , along with Joyce's scholarships, before the remaining expenses were divided between George and Tina. We hold that the chancellor's allocation of the monthly housing stipend was a violation of 38 U.S.C. § 3319(f)(3) because it constituted division of the benefit between parties in a civil proceeding. We reverse and remand for the chancellor to modify the order to give George credit for all benefits from the Post-9/11 GI Bill.

¶16. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE, AND KING, JJ., CONCUR.**