FILED
COURT OF APPEALS
DIVISION II

2015 MAR 10 AM 8: 36

STATE OF WASHINGTON

BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| ANNE SPRUTE, | | No. 45608-7-II |
| Respondent, | | |
| v. | | PART PUBLISHED OPINION |
| ERIC BRADLEY, | | |
| Appellant. | | |

MAXA, J. — Eric Bradley appeals the trial court's orders in a dissolution action relating to his obligations to pay his son's college expenses and his daughter's child support. Bradley argues that the trial court erred by (1) ordering postsecondary educational support for his son even though his former wife Ann Sprute did not file her child support worksheets until after the deadline for filing the request for such support, (2) concluding that Sprute's Post 9/11 GI Bill benefits did not reduce his portion of postsecondary educational support, (3) failing to cap the total amount of postsecondary educational support at the amount charged by the University of Washington, Seattle (UW), and (4) using the one-child column rather than the two-child column of the child support schedule to determine the support for his minor daughter.

We hold that (1) Sprute was not required to file her child support worksheets with her request for postsecondary educational support in order to timely request such support, (2) Sprute's GI Bill benefits could only be applied to reduce her own postsecondary educational support obligations under 38 U.S.C. § 3319(f)(3), (3) the trial court did not abuse its discretion

1

by failing to cap postsecondary educational support at the amount charged by UW, and (4) the trial court erred by using the one-child column to calculate child support for the parties' minor child because the parties were supporting two children. We consider and reject Bradley's additional arguments in the unpublished portion of this opinion. Accordingly, we affirm the trial court's order except for the child support provision. We reverse on that issue and remand for re-calculation of child support for the daughter consistent with this opinion.

FACTS

When Sprute and Bradley divorced in 2003, the trial court entered an order of child support providing for their children Joshua (then age 8) and SB (then age 5). Sprute was an active member of the United States Army and remained so until she retired in 2010 after 23 years in the military.

In 2011, the parties agreed to amend their previous child support order to read:

3.13 Termination of Support
Support shall be paid until the children reach the age of 18, or as long as the children remain(s) enrolled in high school, whichever occurs last, except as otherwise provided below in Paragraph 3.14.

3.14 Post Secondary Educational Support
The right to request post secondary support is reserved, provided that the right is exercised before support terminates as set forth in paragraph 3.13.

Clerk's Papers (CP) at 168.

In May 2013, Sprute filed a petition to modify the parties' 2011 amended child support agreement, requesting that the trial court award postsecondary educational support for Joshua. The petition was filed before Joshua graduated from high school. However, Sprute did not file

child support worksheets with the petition. Sprute eventually filed her child support worksheets, financial declaration, and sealed financial documents on August 19, after Joshua had graduated.

In his response to the petition to modify, Bradley argued that (1) the court did not have authority to rule on the petition based on the parties' 2011 amended child support agreement because Sprute had not timely filed the worksheets supporting the petition, (2) Sprute's Post 9/11 GI Bill benefits should be applied to reduce Sprute and Bradley's joint obligation for Joshua's educational support, and (3) the court should cap Joshua's award of educational support at the amount charged by UW.

The commissioner (1) found that Sprute had timely filed her petition to modify the child support order; (2) ordered Bradley to pay 46 percent of Joshua's tuition, room, and board at Colorado State University up to the amount annually paid at UW; and (3) ordered that both parents receive a pro rata deduction in their payments toward Joshua's educational expenses if Sprute chose to use her GI bill benefits for those expenses. The commissioner also ordered Bradley to pay $1,501.44 per month in child support for SB based on the one-child column of the economic table of the child support schedule.

Sprute filed a motion to revise the commissioner's order. The trial court revised the commissioner's order in two respects. First, the trial court ordered that if Sprute chose to use her Post 9/11 GI Bill benefits, those benefits would apply toward her share of Joshua's educational support only. Second, the trial court ordered that both parents pay their pro rata shares of Joshua's total annual expenses at Colorado State University, regardless of the cost of attending UW.

Bradley appeals.

ANALYSIS

A.    AUTHORITY TO AWARD POSTSECONDARY EDUCATIONAL SUPPORT

Bradley argues that the trial court did not have authority to award postsecondary educational support for Joshua because (1) in order for the request for postsecondary educational support to be timely, Sprute had to file both the motion to modify and the child support worksheets before support terminated, and (2) Sprute failed to file child support worksheets until Joshua's support had terminated. We disagree.

The 2011 amended child support order reserved the right of a party to request postsecondary educational support, provided that the right was exercised before the child's support terminated. Joshua's child support obligation terminated when he graduated from high school. Sprute filed her petition to modify child support, which included a request for postsecondary educational support for Joshua, before Joshua's support terminated at his graduation. But she did not file child support worksheets supporting the motion until after support had terminated.

Bradley relies on RCW 26.09.175 (1), which states that a proceeding for the modification of a child support order "shall commence with the filing of a petition *and worksheets*." (Emphasis added.) He argues that under this statute, a party does not exercise a right to request postsecondary educational support until both a petition to modify and child support worksheets are filed. Therefore, the issue is whether "exercising the right" to request postsecondary educational support requires a party only to file a petition to modify the child support order, or requires a party to file both the petition and the child support worksheets as contemplated in RCW 26.09.175.

The interpretation of a child support order presents a question of law, which we review de novo. *In re Marriage of Sagner*, 159 Wn. App. 741, 749, 247 P.3d 444 (2011). Similarly, the interpretation of a statute presents a legal question that we review de novo. *Anthis v. Copland*, 173 Wn.2d 752, 755, 270 P.3d 574 (2012).

We hold that Sprute exercised her right to request postsecondary educational support by filing her petition to modify for two reasons. First, the child support order did not state that a party had to commence a child support modification "proceeding" before support terminated, just that a party exercise the right to request postsecondary educational support before support terminated. A party exercises the right to request postsecondary educational support by filing a petition to modify the child support order. *In re Marriage of Morris*, 176 Wn. App. 893, 902, 309 P.3d 767 (2013). Sprute filed such a petition. We hold that filing a petition to modify, even without also filing child support worksheets, is sufficient to exercise the right to request postsecondary educational support.[1]

Second, Division Three of this court in *In re Marriage of Pollard* held that the effective date of child support modification was the date the party filed a petition to modify, even when the party did not file child support worksheets until a year later. 99 Wn. App. 48, 55-56, 991 P.2d 1201 (2000). While acknowledging the language of RCW 26.09.175(1), the court stated,

---

[1] In addition, the court in *Morris* did not require a party to strictly comply with statutory procedures for the trial court to have authority to award postsecondary educational support. 176 Wn. App. at 902-04. In *Morris*, a party requesting postsecondary child support filed a motion for adjustment of the child support order instead of a petition for modification. *Id.* at 896. By the time the party's mistake was discovered, it was too late to correct because the child's support had terminated. *Id.* at 896-97. The court ruled that the proper procedure was a motion to modify. *Id.* at 901-02. Nevertheless, the court held that filing the motion for adjustment was harmless error and that the trial court had authority to award postsecondary educational support. *Id.* at 902-04.

5

"We find no statutory mandate that all required documents must be attached before a motion for modification is deemed filed." *Pollard*, 99 Wn. App. at 55-56. We adopt the same rule in the context of the exercise of the right to request postsecondary educational support.

We hold that under the facts here, Sprute exercised her right to request postsecondary educational support when she filed her petition to modify. This occurred before Joshua's support terminated. As a result, we hold that the trial court had authority to award postsecondary educational support for Joshua.

## B. CREDIT FOR POST 9/11 GI BILL BENEFITS

Bradley argues the trial court erred by failing to apply Sprute's Post 9/11 GI Bill benefits to reduce both parties' joint postsecondary educational obligation for Joshua. Sprute argues that giving Bradley credit for GI Bill benefits would be an impermissible division of benefits under 38 U.S.C § 3319(f)(3). As noted above, the interpretation of a statute is a legal issue we review de novo. *Anthis*, 173 Wn.2d at 755. We agree with Sprute.

### 1. GI Bill Educational Benefits

The Post 9/11 Veterans Educational Assistance Act of 2008, also known as the Post 9/11 GI Bill, went into effect in August 2009. *See* 38 U.S.C. § 3001 et seq.; *Neville v. Blitz*, 122 So. 3d 70, 73 (Miss. 2013). Under this act, Sprute is entitled to tuition assistance, a stipend for each semester's books, and a monthly housing stipend if she chooses to pursue an education. 38 U.S.C. § 3313(c)(1). And the statute authorizes Sprute to transfer up to 36 months of her benefits to her eligible dependent children. 38 U.S.C. § 3319(c)(2), (d). If Sprute chooses to transfer her benefits, the "[e]ntitlement transferred . . . may not be treated as marital property, or

the asset of a marital estate, subject to division in a divorce or other civil proceeding." 38 U.S.C. § 3319(f)(3).

2.    Division of Post 9/11 GI Bill Benefits

Bradley admits that 38 U.S.C. § 3319(f)(3) prohibits Sprute's benefits from being divided as property in any dissolution action. But he disputes the characterization of Sprute's GI Bill benefits as *her property*. Instead, Bradley argues that if and when Sprute elects to transfer her benefits to Joshua, those benefits become a gift to Joshua in the form of a payment from a third party or Joshua's own contribution to his education. Bradley claims that gifts to the child or the child's own contribution to his educational expenses must reduce pro rata both parents' obligation to pay the remaining expenses.

No Washington case has addressed how a service member's Post 9/11 GI Bill benefits should be treated for purposes of awarding postsecondary educational support of a child in light of 38 U.S.C. § 3319(f)(3). However, the Mississippi Supreme Court addressed the issue in *Neville*, 122 So. 3d 70.

In *Neville*, the father transferred Post 9/11 GI Bill educational benefits to his daughter. *Id.* at 71. The trial court ordered the divorced parents to divide their daughter's college expenses equally after deducting the father's GI Bill benefits. *Id.* at 72. On appeal, the father argued that the trial court's treatment of his GI Bill benefits violated 38 U.S.C. § 3319(f)(3). *Id.* at 72-73. The Mississippi Supreme Court agreed, stating:

> While the chancellor did not label the benefits as marital property, his instruction to take the benefits off the top of [the daughter's] expenses gave [the mother] a credit that she otherwise would not have had and resulted in [the father] not getting full credit for all of the Post–9/11 GI Bill benefits.

7

*Id.* at 74. The court held that under the language of 38 U.S.C. § 3319(f)(3), the trial court's order was effectively a "division" of the father's GI Bill benefits. *Id.* at 74. Moreover, even though the proceeding was not an original divorce proceeding, the father's petition to modify was a "civil proceeding" pertaining to modification of the parent's divorce decree. *Id.* Therefore, the court concluded that giving the mother credit for the father's GI Bill benefits violated 38 U.S.C. § 3319(f)(3). *Id.* at 74.

The court in *Neville* also addressed the mother's argument that the father's GI Bill benefits belonged to the daughter once they were transferred. The court reasoned that because the service member could revoke the benefits at any time under 38 U.S.C. § 3319(f)(2), the service member was still in control of the transferred benefits and the benefits still belonged to him. *Neville*, 122 So. 3d at 74. Consequently, the court held that the father should be credited for all of his benefits for the purposes of the parents' division of their daughter's educational support, and that none of the father's benefits should be credited to the mother. *Id.*

We adopt the reasoning in *Neville*. Allowing Bradley to get credit for a portion of Sprute's GI Bill benefits would have the practical effect of dividing those benefits, in violation of the plain language of 38 U.S.C. § 3319(f)(3). As a result, we hold that if Sprute chooses to transfer her benefits to Joshua, her benefits should be deducted only from her obligation to pay Joshua's college expenses.

Bradley argues that we should not follow *Neville*, but instead should adopt the reasoning in *In re Marriage of Boisen*, 87 Wn. App. 912, 943 P.2d 682 (1997). In *Boisen*, a divorce decree provided that each spouse would pay half of the children's college expenses. *Id.* at 914. The mother remarried. *Id.* Although the mother and her second husband separated and later

divorced, the second husband voluntarily paid in full two of the children's college expenses with his separate property. *Id.* at 914-15. The mother sued the father, claiming that he was obligated to reimburse her for half of the college expenses that her second husband paid. *Id.* at 915.

We held that although the father was required to pay half of the college expenses, a "necessary corollary" was that he would get credit for half of any third-party payment of those expenses. *Id.* at 921. Because the expenses had been paid in full, the one-half credit eliminated the father's obligation to pay educational expenses. *Id.*

*Boisen* is distinguishable from this case. Here, there is no "third party" paying for Joshua's education because the GI Bill benefits belong to Sprute. Sprute currently possesses the right to use her benefits, and should she choose to transfer them to Joshua, the transfer would be from Sprute to Joshua. Moreover, any transfer in this case is unlike the gift in *Boisen* because Sprute possesses the unqualified right to revoke the transfer at any time. 38 U.S.C. § 3319(f)(2)(A) ("An individual transferring entitlement under this section may modify or revoke at any time the transfer of any unused portion of the entitlement so transferred"). These distinguishing features demonstrate that *Boisen* is inapplicable here.

Based on 38 U.S.C. § 3319(f)(3), we affirm the trial court's conclusion that Sprute's benefits should only be deducted from her share of her obligation to pay Joshua's education expenses.[2]

C.    CAPPING EDUCATION EXPENSES

Bradley argues that in ordering payment of postsecondary educational expenses, the trial court abused its discretion by failing to cap Joshua's total expenses at the amount charged by UW. He claims that he should not have to pay extra because of Joshua's decision to attend an expensive out-of-state college. We disagree.

The trial court has broad discretion to order support for postsecondary education. *In re Marriage of Cota*, 177 Wn. App. 527, 536, 312 P.3d 695 (2013). A trial court abuses that discretion when its decision is based on untenable grounds or reasons. *Id.* at 536.

RCW 26.19.090(2) sets forth the criteria that the trial court should consider when making an award for postsecondary educational support. The trial court initially must find that the child is dependent and "relying upon the parents for the reasonable necessities of life." RCW 26.19.090(2). Once that threshold requirement is satisfied, the trial court must also consider the following non-exhaustive list of factors:

> Age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or

---

[2] Bradley argues in the alternative that the trial court should have considered Sprute's benefits as income on the child support worksheets. In the trial court, Bradley failed to raise the issue of whether the court should treat Sprute's benefits as income for purposes of the calculation of the parties' child support worksheets. Moreover, in Bradley's own calculation of Sprute's income at the trial court, he failed to include Sprute's benefits. Because Bradley failed to raise the issue of applying Sprute's benefits as income on the child support worksheets below, he may not raise the issue on appeal, and under RAP 2.5(a) we do not consider it.

disabilities; the nature of the postsecondary education sought; and the parents' level of education, standard of living, and current and future resources.

RCW 26.19.090(2). "Also to be considered are the amount and type of support that the child would have been afforded if the parents had stayed together." RCW 26.19.090(2).

Bradley does not argue that the RCW 26.19.090(2) factors do not support the trial court's postsecondary educational support award, and in fact he does not even cite to the statute. Instead, he argues that it is not fair to make him pay for the most expensive college alternative, and that he does not have sufficient income to pay the award. However, the parents' current and future resources is only one of several factors the trial court can consider. In the absence of specific arguments, we defer to the trial court's discretion on the amount of postsecondary educational support.[3]

Bradley cites to *In re Marriage of Shellenberger*, 80 Wn. App. 71, 906 P.2d 968 (1995), apparently in support of his argument that he cannot afford to pay the award. In *Shellenberger*, Division One of this court held that a trial court abuses its discretion if it awards a postsecondary educational support obligation that would force a parent into bankruptcy or would require liquidating the family home. *Id.* at 84. The court stated that "[t]his is especially true where the parent also supports a minor child, and the postsecondary support obligation prevents the parent from meeting that obligation to the minor child." *Id.* at 84. However, Bradley produced no evidence that paying Joshua's postsecondary educational support would burden him to the point

---

[3] Bradley notes that the trial court did not make any specific findings. RCW 26.19.090 sets forth no requirement that the trial court explicitly consider the factors on the record. *Cota*, 177 Wn. App. at 537. And we presume that the court considered all evidence before it in fashioning an order on postsecondary educational expenses. *Id.*

of filing for bankruptcy. *See Cota*, 177 Wn. App. at 539 (holding that father failed to demonstrate sufficient financial hardship to negate the trial court's award of postsecondary educational support when the father showed only that his expenses exceeded his income).

Bradley's other argument is that postsecondary educational support generally must be limited to the cost of a public school, citing *Shellenberger* and *In re Marriage of Stern*, 57 Wn. App. 707, 789 P.2d 807 (1990). In *Shellenberger*, the court held that before a trial court can require a parent to pay for postsecondary educational expenses at a private institution, it must "make specific findings as to the cost and availability of college education in the child's chosen field at publicly funded institutions." 80 Wn. App. at 85. The court reasoned, "A trial court should not require objecting parents of modest means to pay for private college where the child can obtain a degree in his or her chosen field at a publicly subsidized institution." *Id.*

In *Stern*, Division One of this court held that a trial court abused its discretion when it ordered a father to pay an income-proportionate share of his minor children's private school education expenses. 57 Wn. App. at 717. Because there was no evidence of the children's need for private school or a lack of an available public school, the court held that there was insufficient evidence to support the trial court's award. *Id.* at 719-20. However, the court cautioned that its holding was not a "per se prohibition against the award of private school tuition for a minor child." *Id.* at 720. The court further recognized that special circumstances "such as family tradition, religion, and past attendance at a private school, among others, may present legitimate reasons to award private school tuition expenses in favor of the custodial parent." *Id.*

Neither *Shellenberger* nor *Stern* compels a cap on postsecondary educational support. Here, the trial court made specific findings justifying Joshua's selection of an out-of-state school

that had an outstanding program in his chosen field. Moreover, Bradley and Sprute had a history of sending their children to private educational institutions and incurring tuition and fees far above what parents would incur if they sent their child to a public school. The trial court here recognized that this familial tradition, which was a special circumstance under *Stern*, reasonably justified the court's award of postsecondary educational support that was above the amount of tuition at UW.

We hold that the trial court did not abuse its discretion in awarding postsecondary educational support or by refusing to cap the amount of such support based on the cost of attending UW.

D.   CHILD SUPPORT WORKSHEETS

Bradley argues the trial court erred in modifying his support obligation for SB by applying the one-child column of the economic table of the child support schedule rather than the two-child column.[4] We agree.

We review child support modifications for a manifest abuse of discretion. *In re Parentage of Goude*, 152 Wn. App. 784, 790, 219 P.3d 717 (2009). A trial court necessarily abuses its discretion if its decision is based on an erroneous view of the law. *In re Marriage of Choate*, 143 Wn. App. 235, 240, 177 P.3d 175 (2008).

Chapter 26.19 RCW directs the trial court to set or modify a basic child support obligation based on the parents' combined monthly net income and the number and ages of the children "for whom support is owed." RCW 26.19.011(1), .020; *In re Marriage of McCausland*,

---

[4] Using the one-child column resulted in an increased child support obligation of $184 per month.

13

159 Wn.2d 607, 611, 152 P.3d 1013 (2007). A parent's support obligation per child is reduced when there are multiple children in the family. RCW 26.19.020.

Postsecondary educational expenses constitute child support. *Cota*, 177 Wn. App. at 542. As a result, because of the trial court's award, Joshua is a child for whom support is owed. Therefore, the trial court should have used the two-child column of the economic table. *See In re Marriage of Daubert*, 124 Wn. App. 483, 502-03, 99 P.3d 401 (2004), *abrogated on other grounds*, *In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007).

Sprute argues that the trial court had discretion to use the one-child column of the economic table because the parties' combined income exceeded $12,000 per month. If the parents' combined monthly income is more than $12,000, RCW 26.19.020 gives the trial court discretion to exceed the economic table based on written findings of fact justifying its decision. *McCausland*, 159 Wn.2d at 620. However, the trial court here made no such written findings justifying its decision to exceed the economic table. Therefore, Sprute's argument has no merit.

We hold the trial court should have used the two-child column of the economic table.

We consider and reject Bradley's remaining arguments in the unpublished portion of this opinion. We affirm the trial court's order except for the child support provision relating to the parties' daughter, and remand for recalculation of child support for the daughter consistent with this opinion.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bradley also argues that the trial court erred in (1) finding Sprute had substantially complied with Bradley's discovery requests and subsequently discontinuing discovery, and (2) failing to make specific findings justifying its imposition of an award of postsecondary educational support greater than 45 percent of Bradley's monthly income. We disagree. We also decline to award attorney fees to either party.

A.     DISCOVERY REQUESTS

Bradley argues that the trial court abused its discretion when it held that Sprute had substantially complied with his discovery requests and when it declared its ruling was a final order cutting off subsequent discovery. We disagree.

1.     Discovery Facts

On June 24, 2013, Bradley sent his first set of interrogatories and requests for production to Sprute. Sprute responded to the interrogatories and requests for production, but Bradley claimed that some answers to the interrogatories were incomplete. On August 22, Bradley filed a motion to compel Sprute to completely answer his first set of interrogatories and to produce certain documents. Sprute's counsel emailed her response to Bradley's counsel addressing each of Bradley's discovery concerns. On August 30, the commissioner held that Sprute had substantially answered the interrogatories, but ordered Sprute to provide additional bank statements and to supplement her financial declaration to explain her extraordinary expense calculation. The commissioner also ordered Sprute to provide Bradley with her dates of employment and income at Microsoft Corporation.

2. Analysis

We review a trial court's discovery order for an abuse of discretion. *Clarke v. Office of Att'y Gen.*, 133 Wn. App. 767, 777, 138 P.3d 144 (2006). A trial court abuses that discretion when its decision is based on untenable grounds or reasons. *In re Marriage of Newell*, 117 Wn. App. 711, 718, 72 P.3d 1130 (2003).

First, Bradley argues the trial court abused its discretion because the court's discovery orders prevented him from determining whether Sprute was underemployed, whether Sprute had accurately reported her military retirement pay, and the extent of Sprute's military educational benefits that she would use. But Sprute provided Bradley with her declaration outlining her earnings for parts of 2010 and 2011, bank statements showing her monthly military retirement payments, and tax returns for 2008 , 2009, 2011 and 2012, , all of which should have given Bradley a clear indication of Sprute's past, current, and potential earning power.

Second, Bradley argues he should have been allowed time to request additional discovery on Sprute's *gross* military retirement payments. He admits that he received information regarding Sprute's actual payments from her retirement, but he contends that he had a right to know whether any allotments or other deductions were being removed from Sprute's gross retirement pay. But there is no clear indication that allotments or tax deductions from Sprute's gross retirement were relevant or could lead to the discovery of admissible evidence regarding Sprute's net income. CR 26(b).

Third, Bradley argues that he should have been allowed to conduct additional discovery to determine what type and how much of Sprute's military benefits she would have to use to

further Joshua's education. Bradley fails to state what type of information additional discovery could have uncovered that would have assisted him in arguing his theory of the case. And Bradley easily could have accessed 38 U.S.C. § 3301 et seq., which governs the educational benefits afforded to a qualifying military member or their child. Or he could have reviewed Sprute's military handbook explaining her educational benefits, which the record shows was also provided to Bradley in the discovery process.

Based on this record, Bradley already had multiple sources of information to pursue to argue his theory of the case. The trial court could have reasonably concluded that based on Bradley's access to this information, any subsequent discovery requests following the final order would have been to pursue irrelevant information for a child support modification or to collect cumulative information on Sprute's employment and military benefits. We hold that the trial court did not abuse its discretion when it held that Sprute had substantially complied with discovery requests or when it held that its ruling was a final order cutting off subsequent discovery.

B.     45 PERCENT CAP ON CHILD SUPPORT

Bradley argues that the trial court's order of postsecondary educational support violated RCW 26.19.065(1) because it increased his child support obligation to more than 45 percent of his net income. However, Bradley failed to preserve this argument for appeal because he never made it before the commissioner or the trial court.

Bradley admits that he failed to raise this argument at the trial court, but argues that we should consider the issue because it involves a potential statutory violation. However, under RAP 2.5 we generally do not review issues raised for the first time on appeal unless the party claims: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right. Bradley does not argue that any one of these exceptions apply. Accordingly, we decline to address this argument on appeal.

C.    ATTORNEY FEES

Both Sprute and Bradley request an award of reasonable attorney fees on appeal. We decline to consider either request.

Sprute requested an award of attorney fees under RAP 18.1. However, RAP 18.1 does not provide an independent basis for the award of fees. It allows for an award of fees only if the requesting party has the right to recover attorney fees based on "applicable law." RAP 18.1(a). Sprute does not identify any grounds for the award of attorney fees under applicable law.

Bradley did not reference attorney fees in his opening brief, and only requested an award of attorney fees in his reply brief. A party requesting attorney fees must "devote a section of its opening brief to the request for the fees or expenses." RAP 18.1(b); *see also Hawkins v. Diel,* 166 Wn. App. 1, 13 n.2, 269 P.3d 1049 (2011) (fee request must be raised in opening brief under RAP 18.1).

Accordingly, we decline to consider either parties' request for attorney fees on appeal.

45608-7-II

We affirm the trial court's order except for the child support provision relating to the parties' daughter. We reverse on that issue and remand for recalculation of child support for the daughter consistent with this opinion.

MAXA, J.

We concur:

JOHANSON, C.J.

LEE, J.

19